**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3325-19

S.K.,

     Plaintiff-Appellant,

v.

N.L.,

     Defendant-Respondent.

_____

          Submitted February 10, 2021 – Decided March 10, 2021

          Before Judges Whipple and Firko.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0328-16.

          S.K., appellant pro se.

          N.L., respondent pro se.

PER CURIAM

     Plaintiff S.K. appeals from a February 27, 2020 Family Part order granting defendant N.L.'s motion to enforce litigant's rights and awarding him $12,512.80

for counsel fees he paid to his former attorneys.  The order granted defendant's motion to emancipate the parties' daughter S.L.,[1] terminated his child support obligation to plaintiff, and required plaintiff to reimburse defendant for overpaid child support.  For the reasons that follow, we affirm the emancipation of S.L., termination of defendant's child support obligation, reimbursement of child support, and reverse and remand as to the award of counsel fees.

I.

We discern the following facts from the record on appeal.  In May 2017, the parties divorced.  A three-page, handwritten term sheet was incorporated into their judgment of divorce.  They have two children, N.L., born in 1995, and S.L., born in 2000.  The parties, both members of the New York State Bar, were represented by counsel at various points of their contentious litigation history.

On May 7, 2019, the parties entered into two detailed consent orders—one addressing "financial terms" and the other pertaining to "family therapy"—which were negotiated by their former respective counsel. The financial consent order provided for: (1) the disposition of the parties' former marital home in Lebanon and a property in New York; (2) the disposition of defendant's life insurance policy and the parties' retirement accounts; (3) defendant's

---

[1]  We use initials to protect the confidentiality of the children.  R. 1:38-3(d)(1).

reimbursement of S.L.'s college and college-related expenses to plaintiff and the future allocation of S.L.'s college expenses; (4) recalculation and modification of child support; (5) the distribution of furniture and antiques in the parties' former marital home; and (6) the disposition of outstanding counsel and expert fees. Although labeled a "consent order for financial terms," paragraph fourteen referenced the simultaneously executed consent order which provided that S.L., who was over the age of eighteen, "shall have an affirmative obligation to commence family therapy with defendant within six (6) months . . . in order to expect defendant to contribute to her college education costs."

This consent order also provided that:

> Should [S.L.] refuse to attend family therapy, in a form recommended by the family therapist after consultation with the other therapists set forth herein, then she shall be automatically emancipated as of six (6) months from the date of the entry of this [c]onsent [o]rder, absent a permanent and substantial [change of] circumstances under Lepis v. Lepis, 83 N.J. 139 (1980)[,] which warrants a review by the [c]ourt.

Defendant's child support obligation for S.L. was $131 per week, which was calculated when S.L. was living at home with plaintiff prior to her enrollment in college full-time, where she resides away from home.

The consent order pertaining to family therapy with the "goal of repairing the parent-child relationship" between defendant and S.L., provided that: (1)

3

defendant would engage treatment with a therapist and attend regular therapy sessions; (2) S.L. would seek her own therapist and attend regular sessions to ascertain when the commencement of family therapy with defendant would be appropriate; (3) the parties were to jointly select an in-network family therapist located near S.L.'s college to work with defendant and S.L. within six months of the date of the consent order; and (4) defendant agreed to consult with a psychiatrist for the purpose of evaluation, diagnosis, and treatment of any mental health disorder prior to and during all family therapy sessions with S.L.

Because S.L. had reached the age of eighteen at the time the consent orders were entered, the parties stipulated "that they will leave it to [S.L.] to decide if she wishes to comply with the terms . . . which relate to her after she is provided with a copy of both [c]onsent [o]rders." The parties also agreed "[s]hould [S.L.] decide not to comply with any of the terms . . . which require any affirmative action by her, then the parties have agreed to financial modifications as part of this post-judgment divorce litigation as set forth in their second, simultaneously entered [c]onsent [o]rder." The record shows S.L. had an active order of protection against defendant in the State of New York, which was set to automatically expire on May 1, 2019, if not extended.

Defendant complied with the consent orders and began seeking treatment as contemplated. On September 29, 2019, defendant's counsel sent a letter to plaintiff's counsel informing her of his compliance and recommending four family therapists to work with defendant and S.L. Plaintiff responded to this letter via e-mail on October 9, 2019. She asserted that defendant breached the terms of the consent order by failing to: (1) commence treatment in a timely manner; (2) adhere to treatment; and (3) provide all medical records in respect of his mental health treatment sessions. Plaintiff also stated defendant was not in compliance with the order, in part, because "mutual acquaintances" informed her that he denied having a mental health disorder. In response to defendant's counsel's recommendation of the four family therapists, plaintiff stated, "I am not sure where we go from here," and she refused to select any of the proposed therapists. There was also no proof that S.L. had commenced individual therapy.

Plaintiff's email also stated that since the parties did not confer and agree on a family therapist within eight weeks of the entry of the consent orders, they were now "beyond the time frame noted in the [o]rder." She further described defendant's late request for S.L. to choose a third-party therapist as, "more than nervy, and completely unreasonable."

A-3325-19

On December 20, 2019, defendant's counsel filed a motion requesting that the judge find plaintiff in violation of litigant's rights for violating the parties' May 7, 2019 consent orders. Defendant sought enforcement of the consent orders; an adjudication that S.L. be emancipated as of October 9, 2019 (the date of plaintiff's email indicating her recalcitrance to follow the terms of the consent orders); and termination of his child support and college contributions for S.L. He also sought reimbursement for overpaid child support, counsel fees, and costs.

In his moving certification, defendant explained the "painstaking efforts" he made to contact S.L. in the past four years, and how plaintiff "poison[ed]" S.L.'s relationship with him. He also certified that he promptly contacted psychiatrists and has "been faithfully attending weekly sessions" with his therapist since June 5, 2019 and provided proof of same from his therapist. In defendant's view, "plaintiff affirmatively and anticipatorily foreclosed such prospects of family reunification." S.L. was attending the University of Pennsylvania and received grants and financial aid, substantially reducing the parties' out-of-pocket contribution.

Plaintiff, as a pro se litigant, in reply filed a cross-motion to enforce the terms of the consent orders. She requested that the judge find defendant

6

intentionally breached the consent orders by refusing to pay his agreed upon share of S.L.'s college expenses and failed to "seek and accept the mental health care" he agreed to. Plaintiff also sought payment of child support arrearages; requested additional child support arrearages; asked the judge to censure defendant "for committing multiple acts of perjury;" and sought reasonable costs for defending his motion.

In her cross-moving certification, plaintiff related that defendant has "no documented facts" to "base his ridiculous claim" that she alienated him from S.L. or their emancipated son. Plaintiff further certified that defendant did not submit a report or correspondence from his "alleged" psychiatrist and filed his motion to emancipate S.L. in "bad faith" with the design "to harass and cause further financial damage to [her] and [S.L.]."

On February 7, 2020, the judge heard oral arguments on the motions. The judge issued an order and statement of reasons on February 27, 2020, granting defendant's motion to enforce the terms of the consent orders and denying plaintiff's cross-motion. The judge also ordered plaintiff to pay $12,512.80 in counsel fees to defendant.

A-3325-19

In her statement of reasons, the judge found it was "exceedingly clear" that neither plaintiff nor S.L. intended to comply with the consent orders. The judge found:

> the agreement required the [d]efendant and [S.L.] to have an initial family therapy session[,] which must commence within [six] months of the agreement.
>
> Defendant certifies that he did consult with a psychiatrist as required and signed a HIP[A]A[2] [release] allowing the psychiatrist to confer with the family therapist regarding any diagnosis or treatment recommendations.
>
> Plaintiff's position that [d]efendant was required to produce a report from the psychiatrist or letter reflecting ongoing treatment is without merit. The consent order specifically provided for the selected family therapist to confer with the psychiatrist regarding [d]efendant's diagnosis, if any, and treatment recommendations, if any. It prohibits the family therapist from sharing this information with [p]laintiff or [S.L.], except to confirm [d]efendant's compliance.
>
> Following [d]efendant's fulfillment of this obligation, he began attending weekly therapy sessions. With the assistance of his therapist, he compiled a list of family therapists which was sent to [p]laintiff on or about September 29, 2019.
>
> Plaintiff rejected this list by way of an email dated October 9, 2019 as not being in compliance with the order and alleged [d]efendant was not in compliance

---

[2] The Health Insurance Portability and Accountability Act, 45 C.F.R. §§ 164.500 to 164.534.

in part because he denied to common acquaintances that he has a mental illness.

The consent order requires that the parties would confer through counsel and select and retain a family therapist. It is notable that [p]laintiff does not state that she took any action at all to locate a family therapist or confer/communicate with counsel. Defendant alone compiled a list and did go beyond the anticipated [eight] weeks. However, there is no prejudice to [p]laintiff or [S.L.]. Defendant has substantially complied with the order and [p]laintiff's refusal to select a therapist was unreasonable and bad faith.

Additionally, [p]laintiff took no action to comply with the obligation to locate a family therapist. Further, there is no evidence that [S.L.] commenced individual therapy as required under the consent order. There is only a letter from [p]laintiff's former counsel indicating [p]laintiff told her [S.L.] was attending therapy. Nothing from any therapist has been submitted then or now.

Plaintiff's certification is replete with events/issues occurring prior to her entering two consent orders on May 17, 2019. The fact that [S.L.] had an [o]rder of [p]rotection against [d]efendant was a fact known when [p]laintiff agreed to the terms of the consent orders and cannot now be used as a defense to the enforcement of the orders.

This appeal ensued.

On appeal, plaintiff argues: (1) the judge abused her discretion and demonstrated unreasonable bias by finding plaintiff breached the consent order by not choosing a third-party therapist in the October 9, 2019 letter or within the

A-3325-19

six-month deadline established in the consent orders; (2) the judge erred, abused her discretion, and demonstrated unreasonable bias by ignoring S.L.'s certification, finding that she did not attend therapy and was not compliant with the terms of the consent order; and (3) alternatively, the $12,512.80 counsel fee award should be reconsidered because plaintiff acted in good faith.

## II.

New Jersey has long espoused a policy favoring the use of consensual agreements to resolve controversies, and "[s]ettlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). "An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute[,]" and "is governed by basic contract principles." Id. at 45. "Among those principles are that courts should discern and implement the intentions of the parties[,]" and not "rewrite or revise an agreement when the intent of the parties is clear." Ibid. "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid.

However, "[t]o the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the

intent of the parties at the time the agreement was entered and to implement that intent." Ibid.

> Although we are obliged to defer to the factual findings and discretionary decisions made by the Family Part due to the specialized nature of the court, a question regarding the interpretation or construction of a contract is a legal one and our review is plenary, with no special deference to the trial judge's interpretation of the law and the legal consequences that flow from the established facts.
>
> [Barr v. Barr, 418 N.J. Super. 18, 31 (App. Div. 2011) (citation omitted).]

It is well-established that matrimonial agreements, like the consent orders in this case, are basically contractual in nature. Pacifico v. Pacifico, 190 N.J. 258, 265-66 (2007). Thus, their interpretation is subject to de novo review on appeal. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo).

While we recognize "[t]he basic contractual nature of matrimonial agreements[,]" Sachau v. Sachau, 206 N.J. 1, 5 (2011), we grant "particular leniency to agreements made in the domestic arena" and allow the Family Part "greater discretion when interpreting such agreements." Ibid. (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)).

A trial court's order on a motion to enforce litigant's rights is reviewed for abuse of discretion. N. Jersey Media Grp. v. State, Office of the Governor, 451 N.J. Super. 282, 296 (App. Div. 2017). Moreover, because we recognize "the special expertise of judges hearing matters in the Family Part," Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010), we will only disturb the Family Part's factual findings if they are "so wholly insupportable as to result in a denial of justice." In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms Resort, Inc., v. Inv. Ins. Co. of America, 65 N.J. 474, 483-84 (1974)). Therefore, an appellate court will only reverse the family court's conclusions if those conclusions are so "clearly mistaken or wide of the mark" that they result in the denial of justice. Parish, 412 N.J. Super. at 48 (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). The Family Part's legal conclusions, however, are reviewed de novo. N.J. Div. of Youth and Fam. Servs. v. I.S., 202 N.J. 145, 183 (2010).

Our review of the record demonstrates the evidence supports the judge's decision that defendant consulted with a psychiatrist and therapist to ascertain a diagnosis for a potential mental health disorder and complied with prescribed treatment. Moreover, the judge correctly rejected plaintiff's argument that defendant was required to produce documentation from his psychiatrist

confirming ongoing treatment before she was obligated to comply with the terms

of the consent orders. In pertinent part, the consent order provided:

> The defendant shall sign a HIPAA release to enable the selected family therapist to confer with the psychiatrist regarding defendant's diagnosis, if any and compliance with the psychiatrist's treatment plan, if any. The parties agree that the family therapist may not disclose any information about defendant's medical records or information which the family therapist learns through the HIPAA release to [S.L.] or plaintiff, other than defendant's compliance or lack of compliance . . . .
>
> Any failure by defendant to comply with the treatment recommendations of the psychiatrist or to fail to remain fully compliant, in any way, with the treatment recommendations of the psychiatrist by defendant, shall obviate any requirement for [S.L.] to attend family therapy with defendant, but defendant will still be held financially responsible for his proportionate share of [S.L.'s] college education costs as set forth in the simultaneously entered [c]onsent [o]rder. If the defendant is diagnosed with a psychological disorder and is not compliant with his psychiatrist's treatment plan, the parties agree that [S.L.], automatically, is not obligated to attend any family therapy session until defendant becomes compliant with the recommended treatment of his psychiatrist.
>
> The defendant shall also execute a HIPAA release for the family therapist to confer with defendant's psychiatrist and to obtain any and all information from defendant's psychiatrist regarding his diagnosis, treatment and compliance with such treatment. Any failure by defendant to execute a HIPAA release to provide the family therapist with full

13

information shall likewise obviate the requirement for [S.L.] to attend family therapy with defendant, as it would be impossible for the family therapist to ascertain defendant's mental health diagnosis, if any, and compliance with a treatment plan, if any, without such a HIPAA release. In the event that defendant fails to execute a HIPAA release to enable the family therapist to ascertain the aforementioned information from the psychiatrist, defendant will still be held financially responsible for his proportionate share of [S.L.'s] college education costs. The family therapist has an affirmative duty under the terms of this [c]onsent [o]rder to advise [S.L.] if defendant is in breach . . . .

We therefore find the judge did not abuse her discretion because the plain language of the consent order did not require defendant to produce documentation regarding diagnosis and treatment.

We also reject plaintiff's argument that the judge abused her discretion in finding S.L. failed to commence therapy as required under the consent order. S.L. was not a party to the consent orders as expressly acknowledged by the parties in the consent orders:

[T]he parties agree that [S.L.] is a legal adult. The parties have entered into the terms of this [c]onsent [o]rder and agree they will leave it to [S.L.] to decide if she wishes to comply with the terms set forth herein which relate to her after she is provided with a copy of both [c]onsent [o]rders. Both parties agree that [S.L.] can in no way be [c]ourt [o]rdered or physically forced to comply with the terms set forth herein which require an affirmative action by [S.L.] because she is a legal adult and was not a party to this matter.

14

Plaintiff's October 9, 2019 letter to defendant made no mention of S.L. consulting or treating with an individual therapist. And, S.L.'s self-serving certification declaring, "I have not seen one but two psychiatrists, neither of whom believes that I need to have a relationship with [defendant]" is inadmissible hearsay.[3] Accordingly, we conclude the judge did not abuse her discretion by concluding there was no evidence that S.L. had commenced individual therapy because no documentation was submitted by any therapist to show S.L. complied with the terms of the consent orders.

Moreover, the analysis did not end there. Rather, plaintiff's recalcitrance to confer through counsel to select and retain a family therapist as referenced in her October 9, 2019 letter, served as the impetus for defendant's motion. S.L.'s refusal to comply with the terms of the consent orders further underscored the need for judicial review. Therefore, we have no reason to disturb the finding that plaintiff was in violation of litigant's rights.

---

[3] Rule 803(c)(4) addresses, "Statements for Purposes of Medical Diagnosis or Treatment. A statement that: (A) is made in good faith for purposes of, and is reasonably pertinent to, medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." S.L.'s certification does not fall under this exception.

III.

We next consider plaintiff's argument concerning the judge's counsel fee award. In particular, plaintiff contends the judge abused her discretion by finding plaintiff "proceeded in bad faith throughout this matter" and "has taken untenable and unreasonable positions" dealing with defendant with respect to the therapeutic requirements. Plaintiff further asserts the judge erred by failing to consider the factors in Rules 4:42-9 and 5:3-5.

In Family Part matters, Rule 4:42-9(a), Rule 5:3-5(c), N.J.S.A. 2A:34-23, and interpretative case law "clearly outline necessary considerations when imposing a counsel fee award." Ricci v. Ricci, 448 N.J. Super. 546, 580 (App. Div. 2017) (citing Mani v. Mani, 183 N.J. 70, 94-95 (2005)). In exercising its discretion, the trial court must abide by N.J.S.A. 2A:34-23, requiring consideration of "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." Mani, 183 N.J. at 94 (quoting N.J.S.A. 2A:34-23). Rule 5:3-5(c), in turn, requires the trial court to consider the following factors when determining an award of counsel fees:

> In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to R[ule] 4:42-9, the following factors: (1) the financial circumstances of the parties;

16

(2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[Ibid.]

Therefore, when considering a counsel fee application, the motion court

must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.

[Id. at 94-95.]

If the court performs its obligation under the statute and rules, and there is "satisfactory evidentiary support for the trial court's findings, 'its task is complete and [a reviewing court] should not disturb the result, even though it . . . might have reached a different conclusion were it the trial tribunal.'" Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). Conversely, a remand is appropriate if the trial court fails to adequately explain an award or denial of counsel fees. See Giarusso v.

17

Giarusso, 455 N.J. Super. 42, 54 (App. Div. 2018); Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002).

Here, the judge awarded counsel fees without analyzing the factors set forth in Rules 4:42-9(a), 5:3-5(c), or N.J.S.A. 2A:34-23. Although all factors should have been considered, particularly relevant here is the judge's finding that plaintiff acted in bad faith and failed "to comply with her duties under the consent order." We therefore reverse the fee award and remand to the Family Part judge for further proceedings consistent with this opinion. We express no opinion as to the appropriate fee award, if any.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3325-19