17 A.3d 793

DONALD C. SACHAU, PLAINTIFF–APPELLANT, v. BARBARA
SACHAU, DEFENDANT–RESPONDENT.

Argued March 29, 2011—Decided May 11, 2011.

*Mark S. Anderson* argued the cause for appellant (*Woolson Sutphen Anderson,* attorneys).

*Barbara Sachau* argued the cause pro se (*Einhorn, Harris, Ascher, Barbarito & Frost,* attorneys; *Jamie N. Berger,* on the brief).

PER CURIAM.

This post-judgment matrimonial appeal arises out of the following facts: plaintiff, Donald Sachau, and defendant, Barbara Sachau, were married in 1964 and divorced in 1979. At the time of their divorce, the parties' two children, Donald and Hilary, lived with Barbara. Pursuant to the final judgment of divorce dated February 21, 1979, Donald was to pay Barbara $225 per month per child and Barbara was to remain in the marital home with the children. The judgment further stated that the parties would hold the marital premises until it was sold and that

(1) [Barbara] and the two children of the marriage shall be entitled to reside at the marital home, 15 Elm Street, Florham Park, New Jersey, until the youngest

child shall have reached the age of 18 and graduated from high school. At such time as the youngest child shall have attained the age of 18 and graduated from high school, the house shall be appraised and listed for sale by both parties within 30 days. If the parties cannot agree upon an appraiser, the Court, upon application, shall appoint such an appraiser. The cost of an appraiser shall be borne equally by the parties.

(2) The marital home shall be sold and any gross price within 15% of the appraised value shall be an acceptable purchase price to which both parties shall consent if they cannot agree. All costs of sale, legal fees, brokerage commissions and appraisal fees shall be deducted from the gross sales price. Upon the sale of the marital premises, the proceeds shall be allocated in the following manner: (i) [Barbara] shall be paid $10,000.00; (ii) [Donald] shall be paid $15,000.00; (iii) the remaining balance shall be divided equally.

On November 28, 1984, Hilary, the youngest child, reached age eighteen and graduated from high school, triggering the sale provision. However, for the next twenty-two years, neither party took action to enforce their rights under the judgment. Barbara remained in the marital home, and starting September 1990, began making inconsistent payments to Donald, at irregular intervals, totaling $79,415,[1] through October 2004.

In mid–2005, Donald became unable to support himself solely on social security payments and became partially dependent on charity. As a result, he sought the balance of his interest in the marital home from Barbara. Receiving an unsatisfactory response, Donald filed a motion on March 6, 2006, to compel the sale of the marital home and division of the proceeds in accordance with the judgment. Without holding an evidentiary hearing, the trial judge ruled that the marital home should be sold and that Barbara should "receive credit for payments that she made in the amount of $79,315 before a disbursement of the sale of proceeds is made." Barbara filed a motion for reconsideration, which was denied and she was ordered to sign a listing agreement to sell the marital home.

---

[1] The original trial judge determined, without holding an evidentiary hearing, the total amount of payment from Barbara to Donald to be $79,315. On remand, a new trial judge determined the amount to actually be $79,415.

Barbara filed a motion for leave to appeal, which was granted by order dated September 21, 2007. After some procedural maneuvering that need not be recounted here, the Appellate Division accelerated the appeal and scheduled oral argument. On November 7, 2007, that court remanded the case to the trial judge with the following instructions:

> As the judgment of divorce provides that the parties shall sell and equally divide the proceeds from sale of the marital premises (after the distribution of the first $25,000) as of the date when the youngest child graduates from high school and turns 18, that date being November 28, 1984, and [Donald] having failed to enforce his rights under the judgment of divorce for approximately 22 years thereafter while payments were made to and accepted by him over a fifteen-year period to buy out [Donald]'s interest in the marital premises, while [Barbara] maintained the home and paid all property taxes, the matter is remanded to the Family Part for an evidentiary hearing to determine (1) whether the agreement by the parties to permit [Barbara] to buy out [Donald]'s interest included an agreement as to the total amount to be paid by [Barbara] for [Donald]'s share of the marital premises, (2) the amount of payments made by [Barbara] to [Donald] for purposes of purchasing the premises (the judge having previously found it to be $79,315 without an evidentiary hearing), (3) in the absence of an agreed price, the value of the premises as of November 28, 1984 (*see Pacifico v. Pacifico*, 190 *N.J.* 258, 269 [920 *A.*2d 73] (2007)), one-half of which plus $5000 shall constitute [Donald]'s interest in the premises, (4)(a) to void the third-party sale if there is no deficiency in the amount to be paid by defendant or (4)(b) to determine the amount still due from [Barbara] to [Donald], together with simple interest at the *R.* 4:42–11 rate due on unpaid principal less $20,000 and all other payments made to date, if there is a deficiency, and (5) in such case to determine whether a compelled sale should be deemed inequitable at this point in time.
>
> Out of an abundance of caution and to avoid any perception of pre-judgment, because the judge previously hearing this matter has already determined some of the facts on a non-evidentiary basis, we order the presiding judge of the Family Part to assign this matter to another trial judge for purposes of disposition.

On remand, the trial judge conducted a three-day plenary hearing at which both parties testified. After the plenary hearing, the judge concluded that there was no agreement between the parties in respect of the valuation date and that the 1984 value of the home was $120,000. Further, in accordance with the Appellate Division's instructions, Donald's share, based on that value plus interest, was $144,915.62 and Barbara's $417,472.64. The judge also held that Barbara would be credited for payments made, and concluded that "the passage of time ha[d] not caused a

change in position to the detriment of [Barbara]." In ruling, the judge noted that the equities were in parity.

Donald appealed, and the Appellate Division affirmed, concluding that the distribution of the proceeds from the marital home conformed to the Appellate Division's previous remand order. Donald filed a petition for certification that we granted. *Sachau v. Sachau,* 204 *N.J.* 41, 6 *A.*3d 444 (2010).

## I.

Donald argues that the trial court's final determination, based on the Appellate Division remand, altered, without a hearing, the distribution of the proceeds from the sale of the marital home contrary to the parties' agreement. Barbara counters that the evidence supported the 1984 valuation date and that the Appellate Division's interpretation of the judgment was correct.

## II.

The basic contractual nature of matrimonial agreements has "long been recognized." *Petersen v. Petersen,* 85 *N.J.* 638, 642, 428 *A.*2d 1301 (1981); *Harrington v. Harrington,* 281 *N.J.Super.* 39, 46, 656 *A.*2d 456 (App.Div.), *certif. denied,* 142 *N.J.* 455, 663 *A.*2d 1361 (1995); *Massar v. Massar,* 279 *N.J.Super.* 89, 93, 652 *A.*2d 219 (App.Div.1995). At the same time, "[t]he law grants particular leniency to agreements made in the domestic arena," thus allowing "judges greater discretion when interpreting such agreements." *Guglielmo v. Guglielmo,* 253 *N.J.Super.* 531, 542, 602 *A.*2d 741 (App.Div.1992).

As a general rule, courts should enforce contracts as the parties intended. *Henchy v. City of Absecon,* 148 *F.Supp.*2d 435, 439 (D.N.J.2001); *Barr v. Barr,* 418 *N.J.Super.* 18, 32, 11 *A.*3d 875 (App.Div.2011). Similarly, it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties. *Tessmar v. Grosner,* 23 *N.J.* 193, 201, 128 *A.*2d 467 (1957). A court's role is to consider what is "written in

the context of the circumstances" at the time of drafting and to apply "a rational meaning in keeping with the expressed general purpose." *Atl. N. Airlines, Inc. v. Schwimmer,* 12 *N.J.* 293, 302, 96 *A.*2d 652 (1953); *accord Dontzin v. Myer,* 301 *N.J.Super.* 501, 507, 694 *A.*2d 264 (App.Div.1997). With those principles of construction in mind, we turn to the present inquiry.

### III.

Our decision in *Pacifico v. Pacifico,* 190 *N.J.* 258, 920 *A.*2d 73 (2007), provides the framework for our analysis. In *Pacifico,* the plaintiff, Ginger Pacifico, and the defendant, James Pacifico, married in 1978 and divorced in 1997. *Id.* at 261, 920 *A.*2d 73. "At the time of their divorce, the parties' two sons ... lived with Ginger in the marital home." *Ibid.* Pursuant to the property settlement agreement (PSA) that was incorporated into the final judgment, Ginger "was to remain in the marital home with the boys and was responsible for the mortgage, property taxes, and homeowners' insurance to be paid out of the support provided by James." *Id.* at 261–62, 920 *A.*2d 73. "The PSA further stated that the parties would hold the marital premises as joint tenants with right of survivorship until it was sold" upon the "[y]oungest child's attainment of the age of 19." *Id.* at 262, 920 *A.*2d 73.

Pursuant to the terms of the PSA, on the youngest child's emancipation, "James filed a post-judgment motion to compel the listing and sale of the marital home." *Ibid.* "Ginger filed a cross-motion to buy out James' interest for one-half of the value that had been established by a broker's market analysis in 1996." *Ibid.* She also "certified that her understanding was that the PSA gave her a right of first refusal at the 1996 value in return for her obligation to pay all of the carrying charges on the house." *Ibid.* James certified that the 1996 market analysis was "merely to assist him in deciding whether to sell to a third party at the time of the divorce." *Ibid.*

"Without holding an evidentiary hearing, the trial judge ruled that Ginger's right to a buy-out was to be at current market value

when exercised." *Id.* at 263, 920 *A.*2d 73. "Ginger appealed, and the Appellate Division reversed, concluding that the PSA was ambiguous because it did not specify the price at which the parties could exercise their respective buy-out options." *Ibid.* "Because the parties offered conflicting proofs concerning the meaning of the provision, and because the panel found that James' attorney drafted the agreement," it applied the doctrine of *contra proferentem*[2] and held that "any ambiguity would be construed in Ginger's favor." *Ibid.* The panel also stated that "[g]iving Ginger the benefit of all favorable inferences from the evidence, a factfinder could conclude that the agreement should be construed as she contends, and thus, a plenary hearing was required." *Ibid.*

At the plenary hearing, both parties testified and various drafts of the PSA were received into evidence. *Id.* at 263–64, 920 *A.*2d 73. "After the plenary hearing, the trial judge concluded that the PSA was ambiguous and that, in accordance with the Appellate Division's instructions, the ambiguity had to be construed in Ginger's favor because James' lawyer drafted the contract." *Id.* at 265, 920 *A.*2d 73. In reaching that conclusion, "the judge made no findings about the parties' intentions or credibility." *Ibid.*

James appealed, and the Appellate Division affirmed. James then filed a petition for certification that we granted. *Pacifico v. Pacifico,* 188 *N.J.* 576, 911 *A.*2d 68 (2006).

In ruling, we first noted that "neither party argue[d] that no agreement existed regarding the valuation date when the PSA was executed." *Pacifico, supra,* 190 *N.J.* at 266, 920 *A.*2d 73. Rather, "both contended that, when they signed the agreement, there was a clear understanding between them regarding the buy-out value to be ascribed to the house." *Id.* at 267, 920 *A.*2d 73. They disagreed as to what that understanding was: Ginger contended

---

[2] *Contra proferentem* is the legal doctrine applied when a contract term is ambiguous; it requires a court to adopt the meaning most favorable to the non-drafting party. 5 *Corbin on Contracts* § 24.27 (Perillo ed., rev. ed.1998); *see also Pacifico, supra,* 190 *N.J.* at 267–68, 920 *A.*2d 73 (for an explanation of *contra proferentem*).

the value was set at the time of the judgment, whereas James claimed that the property was to be valued as of the triggering event. *Ibid.* Because of that disagreement, we held that a plenary hearing was appropriate. *Ibid.*

We parted from the Appellate Division with respect to its instructions to the trial judge regarding the doctrine of *contra proferentem.* *Ibid.* We noted first that the panel "oversimplified the matrimonial settlement process by concluding that James' lawyer 'drafted' the PSA." *Id.* at 268, 920 *A.*2d 73. In so doing, we concluded that the panel ignored the normal manner in which property settlement agreements are developed. *Ibid.* Because there is no singular "drafter" in a matrimonial case, the prerequisite for the doctrine of *contra proferentem*—unequal bargaining power—does not exist. *Ibid.*

Our decision to reverse and remand to the trial judge included additional instructions regarding the burden of persuasion. *Id.* at 269, 920 *A.*2d 73. We cautioned that "Ginger, as the cross-movant seeking to obtain judicial approval to exercise an option to purchase the marital home at the 1995 value, should bear the burden of establishing that that was the intent of the parties." *Ibid.* In reaching that conclusion, we relied on the fact that Ginger was attempting to exclude a portion of the value of marital property from distribution. *Ibid.* (citing *Landwehr v. Landwehr,* 111 *N.J.* 491, 504, 545 *A.*2d 738 (1988); *Painter v. Painter,* 65 *N.J.* 196, 214, 320 *A.*2d 484 (1974) (noting that the burden of establishing immunity of a particular asset from equitable distribution will rest upon the spouse who asserts it)).

We further declared that "where the sale of a marital asset is to abide a future event, for example the coming of age of a child, and no alternative is provided, current market value as of the time of the triggering event is presumed." *Id.* at 269, 320 *A.*2d 484. Obviously, that statement can only be understood on the facts of *Pacifico* and in the context of a sale which actually takes place at the point of the happening of the trigger. There is plainly no rationale for a presumption of value as of the trigger date if no

sale occurs. Indeed, in the absence of an agreement between the parties to the contrary, marital property that is to be sold should be valued as of the date of the sale. *See Wadlow v. Wadlow*, 200 *N.J.Super.* 372, 385, 491 *A.*2d 757 (App.Div.1985) (marital home passive asset valued as of date of distribution).

### IV.

Here, the judgment of divorce was silent regarding the value to be ascribed to the marital home if it was not sold upon the triggering date—the emancipation of the youngest child. Thus, it fell to the court to supply that omitted term. *See Pacifico, supra*, 190 *N.J.* at 266, 920 *A.*2d 73 (citing *Restatement (Second) of Contracts* § 204(b)(1981)). The Appellate Division properly remanded the matter for a hearing on that subject. However, the panel erred in its additional determination that, if the trial court found there was no agreement regarding value in these circumstances, *Pacifico* required the property to be valued as of the 1984 trigger. That is an incorrect view of *Pacifico* which only presumes value as of the trigger if the sale takes place at that time. Here, because there was no agreement to the contrary, the house should have been valued as of the date of the sale.

We thus reverse and remand the matter to the same trial judge, not to conduct a full plenary hearing, but to re-evaluate his conclusions in light of the 2008 valuation date and to distribute the proceeds accordingly.

### V.

The judgment of the Appellate Division is reversed. The matter is remanded to the trial judge for proceedings consistent with the principles to which we have adverted.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.