**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3034-19

STACEY GLOWZENSKI,

    Plaintiff-Appellant,

v.

STEPHEN GLOWZENSKI,

    Defendant-Respondent.

_____

Submitted April 20, 2021 – Decided May 7, 2021

Before Judges Fisher and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0305-17.

Louis S. Scalzo, attorney for appellant.

Keith, Winters, Wenning & Harris, LLC, attorneys for respondent (Brian D. Winters, on the brief).

PER CURIAM

In this matrimonial appeal, plaintiff Stacey Glowzenski argues that the trial judge erred in determining – after a four-day hearing – that, during a

mediation session, the parties settled their remaining economic issues. Because we must defer to the trial judge's factual findings, we conclude that Stacey's arguments have no merit and affirm.

The parties were married in 1993; they have two children. Stacey filed this divorce action in 2016, and defendant Stephen Glowzenski filed an answer and counterclaim, also seeking a divorce. After a number of court appearances over the course of a few years, the trial judge entered an order on February 19, 2019, that: scheduled the case for a June 2019 trial; ordered the parties to exchange updated case information statements as well as provide other information; and directed them to attend economic mediation.

The parties and their then attorneys attended mediation on May 15, 2019, at the conclusion of which they both initialed a term sheet. Soon after, Stephen moved for an order declaring that a settlement had been reached. Stacey, who had retained new counsel, cross-moved and argued that a settlement had not been reached. The judge denied Stephen's motion without prejudice, finding a genuine factual dispute about whether the parties' negotiations led to an enforceable settlement agreement. The judge scheduled a hearing to resolve the factual disputes.

A-3034-19

During a plenary hearing on nonconsecutive days that started on August 26, 2019, and ended on December 10, 2019, the judge heard the testimony of the parties as well as the mediator. By way of an order and opinion entered on February 5, 2020, the judge found that the parties had entered into a settlement agreement during mediation and that the agreement was not – as Stacey alleged – unconscionable. A judgment of divorce, which incorporated the terms of the settlement agreement, was entered on March 3, 2020.

Stacey appeals, arguing:

> I. THE TRIAL COURT ERRED BY FINDING THE MEDIATOR'S NOTES GENERATED ON MAY 15, 2019 CONSTITUTED A FAIR AND DEFINITIVE SETTLEMENT AGREEMENT.
>
> > A. The Mediator's Notes Are Not Titled and Not Signed by Counsel.
> >
> > B. The Mediator's Notes Expressly Indicate Conditions Precedent to Settlement of Material Terms, Are Vague, and Otherwise Fail for Indefiniteness, Lacking the Essential "Meeting of the Minds" Component.
>
> II. THE MEDIATOR'S NOTES ARE NOT ENFORCEABLE AS A SETTLEMENT AGREEMENT DUE TO FRAUD AND UNCONSCIONABILITY.
>
> > A. Evidence of Fraud by Defendant.

A-3034-19

B. Unconscionability.

III. THE TRIAL COURT ERRED BY PERMITTING
THE MEDIATOR TO TESTIFY AT THE PLENARY
HEARING.

We find no merit in these arguments and affirm.

We reject Stacey's first point and affirm the order enforcing the settlement agreement substantially for the reasons set forth in the judge's written opinion. We add only the following few comments.

We start with the premise that agreements between divorcing parties that are fair and just may be enforced. Petersen v. Petersen, 85 N.J. 638, 642 (1981); see also Sachau v. Sachau, 206 N.J. 1, 5 (2011) (recognizing the basic contractual nature of matrimonial agreements); Pacifico v. Pacifico, 190 N.J. 258, 265 (2007) (same). Matrimonial settlement agreements "need not necessarily be reduced to writing or placed on the record." Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995). Indeed, "[w]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact that the writing does not materialize because

4

a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1983).[1]

The judge made extensive findings, concluding Stacey's depiction of the negotiations during mediation was not credible. Stacey claimed, for example, that no negotiations actually took place, the mediator had animus toward her, "every time she opened her mouth" things "g[ot] worse for her," and the mediator merely decided the outstanding issues. The judge found Stacey's testimony on these matters was not "forthright" or credible. Instead, in relying on the credible testimony of Stephen and the mediator, the judge found the mediator did not make a "decision" but simply memorialized the parties' negotiated agreement on the term sheet. The judge also found from her view of the testimony that the parties both signified their consent by initialing the term sheet and that Stacey's later renouncement of the agreement was simply a case of "buyer's remorse." The judge's findings of fact are deserving of our

---

[1] We might add the familiar rubric that "settlement of litigation ranks high in our public policy," Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961); see also Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), but it does not follow that courts will enforce any alleged settlement on the basis of this policy. The court must first find the parties intended to resolve the litigation, i.e., that there was a meeting of the minds on essential terms, and that it is fair and just to enforce their agreement. In short, it does not "rank high in our public policy" to terminate litigation when it cannot be said that the matrimonial litigants reached a fair and just agreement.

A-3034-19

deference, <u>Cesare v. Cesare</u>, 154 N.J. 329, 411 (1998); <u>Rova Farms Resort, Inc. v. Investors Ins. Co.</u>, 65 N.J. 474, 484 (1974), and the conclusions drawn from those findings are well-grounded in the legal principles described earlier.

In her first point, Stacey additionally argues that the term sheet's lack of a title and the absence of the parties' attorneys' signature on the term sheet plays a significant role in determining whether an agreement was reached. We disagree. A contract does not need to be labeled a contract to be a contract. Although perhaps relevant to an understanding of a layperson's intent in signing, the absence of a label or even the use of a wrong label has little relevance in determining a writing's meaning. <u>See, e.g.</u>, <u>Applestein v. United Bd. & Carton Corp.</u>, 60 N.J. Super. 333, 348 (Ch. Div.) (recognizing that equity looks "to the substance rather than the form" and "never pays homage to the mere form of an instrument or transaction, if to do so would frustrate the law or place justice in chains"), <u>aff'd o.b.</u>, 33 N.J. 72 (1960); <u>see also</u> <u>Liberty Mut. Ins. Co. v. Garden State Surgical Ctr., L.L.C.</u>, 413 N.J. Super. 513, 523-24 (App. Div. 2010). The judge found there was no confusion and Stacey understood she had – by initialing – freely and voluntarily consented to entering into a binding agreement with Stephen on the issues described in the term sheet.

A-3034-19

We also reject Stacey's contention that there is relevance to the fact that the parties' attorneys did not sign the term sheet. The mediator explained in her credible testimony that she never, in these situations, seeks the signature of counsel. We agree this fact has no impact; it is the client's assent that is relevant.

We also reject the argument in Stacey's second point that the settlement agreement is either unconscionable or the product of fraud substantially for the reasons set forth by the trial judge.

And we reject Stacey's third point, in which she argues that the judge erred by allowing the mediator to testify. To be sure, the scope of testimony in such a situation may be limited by the mediator privilege, N.J.R.E. 519, and the Uniform Mediation Act, N.J.S.A. 2A:23C-1 to -13. But the judge carefully limited the scope of the testimony to non-privileged events. For example, the mediator was properly allowed to identify the term sheet and to testify about its execution, the time spent in mediation, the atmosphere of the negotiations, and other similar matters that did not call for a revelation of privileged communications though Stacey's testimony as to what was said during mediation could fairly be understood as opening the door to similar revelations from the mediator.

A-3034-19

To summarize, we affirm the judge's determination that the parties had freely and voluntarily entered into a settlement agreement – as embodied by the term sheet – that was fair and just and was not unconscionable or the product of fraud. We add one further comment about the scope of the settlement agreement that has no bearing on its enforcement.

One of the provisions of the term sheet states: "No C.S. until parties examine benefits of G.I. bill." It appears there may have been benefits available to Stephen that would inure to one of the children who apparently was then college bound, but, during mediation, the parties were unsure about the precise extent of those benefits. Because of that doubt, the parties agreed – as the term sheet reveals – that Stephen would not be obligated to pay "C.S." (child support) to Stacey until those rights were ascertained. While that expression certainly constituted a binding agreement, it memorialized only an understanding that their child support issues would remain unresolved until they knew more about any available G.I. bill benefits, and until then, Stephen would not be required to pay child support. The lack of a final resolution of their child support dispute, however, did not render unenforceable the other aspects of the term sheet.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8                                                          A-3034-19