NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3976-19

BONNIE MARIE COTTRELL
and CHRISTOPHER DANIEL
LETRENT, Co-Executors of
the ESTATE OF MARYANN
COTTRELL, deceased,

      Plaintiffs-Respondents,

v.

NATHAN HOLTZBERG, M.D.,
ORTHOPEDIC INSTITUTE OF
CENTRAL JERSEY, P.A.,
KIMBALL MEDICAL CENTER,
INC., MONMOUTH MEDICAL
CENTER SOUTHERN CAMPUS
FOUNDATION, INC., BARRY
GORDON, M.D., OCEAN
COUNTY INTERNAL
MEDICINE ASSOCIATES,
P.C., BHARAT PATEL, M.D.,
ALEX LANGMAN, M.D.,
MEDICAL RADIOLOGY
GROUP, P.A., BRUCE
MONASTERSKY, M.D.,
NEUROLOGICAL ASSOCIATES
OF OCEAN COUNTY, P.A.,
FOUNTAIN VIEW CARE
CENTER, SHORE HEALTH
CARE CENTER, INC.,
SATUYENDRA SINGH,
M.D., NORTH ATLANTIC
MEDICAL ASSOCIATES,

APPROVED FOR PUBLICATION

May 20, 2021

APPELLATE DIVISION

ST. BARNABAS MEDICAL
CENTER, ST. BARNABAS
CORPORATION, BARNABAS
HEALTH, INC., HARHPAL
SINGH, M.D., NORTH JERSEY
BRAIN & SPINE CENTER,
RAHUL PAWAR, M.D.,
SAIKIRAN MURTHY, D.O.,
OTAKAR HUBSCHMANN, M.D.,
SOMC MEDICAL GROUP, P.C.
D/B/A OCEAN COUNTY FAMILY
CARE, SUSAN BELTRA, R.N, and
ELIZABETH NOLLER, R.N.,

       Defendants,

and

1351 OLD FREEHOLD ROAD
OPERATIONS, LLC D/B/A BEY
LEA VILLAGE CARE CENTER,

       Defendant-Appellant/
       Cross-Respondent,

and

COMPLETE CARE AT BEY
LEA LLC,

       Defendant-Respondent/
       Cross-Appellant.
_____

Argued March 22, 2021 – Decided May 20, 2021

Before Judges Messano, Suter, and Smith.

2

A-3976-19

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5557-16.

Philip J. Anderson argued the cause for appellant/cross-respondent (Buchanan Ingersoll & Rooney, PC, attorneys; David L. Gordon, Eric D. Heicklen and Evan M. Goldsmith, of counsel and on the briefs).

Desiree L. Wilfong argued the cause for respondent/cross-appellant (Lucas & Cavalier, LLC attorneys; Desiree L. Wilfong and Robert M. Cavalier, of counsel and on the brief).

Alaina A. Gregorio argued the cause for respondents (Messa & Associates, PC, attorneys; Irene M. McLafferty and Alaina A. Gregorio, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendant 1351 Old Freehold Road Operations, LLC, d/b/a Bey Lea Village Care Center (Bey Lea) appeals the April 9, 2020 order denying its motion to compel arbitration, and the May 22, 2020 order denying reconsideration. Defendant Complete Care at Bey Lea, LLC (Complete Care), who purchased the facility in June 2018, filed a cross-appeal of the same orders. Plaintiffs Bonnie Marie Cottrell and Christopher Daniel Letrent (plaintiffs) are

3

the children of Maryann Cottrell (Maryann)[1] and the co-executors of her estate. We affirm the challenged orders for reasons that follow.

## I.

Maryann was admitted to Bey Lea nursing facility on April 9, 2017. The next day she signed a Voluntary Binding Arbitration Agreement (the Agreement). Maryann was discharged twenty days later on April 29, 2017. She was admitted again on January 23, 2018, and completed new intake forms, but not a new arbitration agreement. Complete Care purchased the nursing facility in June 2018. Maryann passed away on November 8, 2018, as a resident of the facility. She was forty-eight years old.

The first sentence of the Agreement she signed in 2017 provided it was "intended to resolve by binding arbitration any dispute (as described below) related to any admission at the Center." Bey Lea cites this language as support for its claim the Agreement applies to Maryann's 2018 admission.

The Agreement described arbitration as "an alternative means of resolving a dispute without involving the courts." Paragraph two explained what disputes were to be arbitrated. Specifically,

---

[1] We refer to Maryann Cottrell by her first name to avoid confusion because another party has the same surname. We apologize for the necessity of this informality.

A-3976-19

**2. Disputes to be Arbitrated**. Any and all claims or controversies arising out of or in any way relating to this Agreement or the Patient's stay at the Center, including all prior stays at the Center, including disputes regarding interpretation and/or enforceability of this Agreement, whether arising out of state or federal law, whether existing now or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, negligence, tort or breach of statutory duties (including, without limitation, claims based on personal injury or death), regardless of the basis for any duty or of the legal theories upon which the claim is asserted, shall be submitted to binding arbitration.

The Agreement was "voluntary," meaning it was not a "condition" for admission. It expressly provided the parties were "waiving (giving up)" their rights to a trial before a court or jury. It described the procedures for demanding arbitration whether by the patient or Bey Lea. An arbitrator or arbitration panel was to be selected. Under paragraph nine, the arbitrator or arbitration panel was to "resolve all gateway disputes regarding the enforceability, validity, severability and/or interpretation of this Agreement, as well as resolve issues involving procedure, admissibility of evidence, discovery or any other issue." The decision by the arbitrator or panel "binds the parties" and the "right to appeal" was limited to what was allowed under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16. Any award was to be confidential, as were "[a]ll matters relating to the arbitration hearing . . . ."

5

The Agreement was binding on a myriad of persons and entities including "any person whose claim is derived through or on behalf of the [p]atient." Parties were responsible for their own attorney's fees and costs "[i]n any dispute . . . ." If any term of the Agreement was found to be "invalid or unenforceable," it could be severed, and the remaining portions of the Agreement enforced. The Agreement provided it was the "entire agreement between the parties with respect to arbitration . . . ." It provided "[t]his Agreement shall survive the termination, cancellation or expiration of the Admission Agreement."

On September 27, 2016, Maryann filed a lawsuit against several health care providers and hospitals, alleging negligence and corporate negligence in their diagnoses and treatment of her, which she alleged led to paralysis and other medical conditions. After Maryann passed away, plaintiffs filed an amended complaint, suing as the co-executors of Maryann's estate.

The amended complaint added Bey Lea as a defendant, claiming that through various actions and omissions, it breached its duty to Maryann "to provide medical care and treatment in a safe and reasonable manner in accordance with the existing standards of care" resulting in "serious personal injuries," pain and suffering and her premature death. The new counts included causes of action against Bey Lea alleging negligence, corporate negligence,

negligence per se and violation of resident rights. None of the allegations related to Maryann's 2017 admission; they all related to the 2018 admission. Bey Lea filed an answer asserting affirmative defenses.

On March 11, 2020, Bey Lea filed a motion to compel binding arbitration, arguing the Agreement applied to the 2017 and 2018 admissions. The trial court denied the motion on April 9, 2020, and subsequently denied reconsideration on May 22, 2020.

Just after Bey Lea filed the motion to compel arbitration, plaintiffs amended the complaint for a second time. They added Complete Care as a defendant because Complete Care purchased the facility from Bey Lea in June 2018. All the causes of action against Bey Lea were amended to include Complete Care. None of the allegations against Bey Lea or Complete Care related to the 2017 admission.

On April 9, 2020, Judge Michael V. Cresitello, Jr. denied Bey Lea's motion to compel binding arbitration. In his oral opinion, the judge found there was "no agreement in place for [Maryann's] admission" from January 23, 2018 to her death on November 8, 2018. The only agreement for Maryann's admission was signed on April 10, 2017, but she was discharged on April 29, 2017, and did not come back until January 23, 2018. The judge concluded the Agreement

7

from the earlier admission was "not enforceable" for the later admission. He concluded it was not "supportable to suggest that [Maryann] can be prospectively bound by an agreement that [she] signed . . . almost a year ago." He found "there simply [was] . . . no enforceable agreement in place to cover the admission from January 23rd of 2018, through November 8th of 2018."

The judge noted the Agreement complied with the standards set forth in Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 447 (2014). Referencing the arbitration provision, the judge observed: "It's there. It's bold. It's obvious. It's conspicuous. It clearly tells the person signing it . . . that they are waiving their rights specifically to a jury trial and waiving their rights stepping foot in the courthouse."

Bey Lea requested reconsideration of the April 9, 2020 order. It argued that paragraph nine of the Agreement was a "delegation" clause and that plaintiffs never challenged the validity of this clause. Because of the delegation clause, all issues — including whether the Agreement applied to Maryann's 2018 admission — should be decided by an arbitrator. Bey Lea argued that when Maryann signed the Agreement, she agreed to arbitrate "anything prior and subsequent." Plaintiffs opposed the reconsideration motion arguing the clear language of the Agreement did not include or contemplate future admissions.

A-3976-19

On May 22, 2020, the judge denied reconsideration, finding his prior decision was not "palpably incorrect or contrary to the law." He reiterated there was "no valid contract in place for the admission that happened nine months later. There's not a separate, new contract signed." As for the second admission in 2018, the judge agreed with plaintiffs' interpretation of the Agreement finding "there was nothing in that contract that would bind them for a future admission on the face of that agreement."[2]

Bey Lea appealed both orders. Complete Care cross-appealed. Bey Lea argues:

> A. The Court's Review of this Appeal is De Novo.
>
> B. The Motion Court Erred by Determining the Enforceability of the Agreement notwithstanding the Delegation Language Contained within the Arbitration Agreement.
>
> i. Plaintiffs' Failure to Contest the Delegation Clause of the Agreement Required the Motion Court to Refer Plaintiff[s'] Objections to the Arbitrator.
>
> ii. The Federal Arbitration Act Requires Courts to Enforce Arbitration Agreements According to Their Terms, Including the Terms of a Delegation Clause.

---

[2] Complete Care did not participate in Bey Lea's motion to compel arbitration or its motion for reconsideration, but on August 10, 2020, the trial court joined Complete Care as a party to the trial court's April 9, 2020 and May 22, 2020 orders.

A-3976-19

iii.  The Appellate Division Has Already Decided that the Language in this Agreement Clearly and Unmistakably Delegates Threshold Issues of Arbitrability to an Arbitrator.

iv.  All Ancillary Arguments regarding Enforceability and Interpretation of the Arbitration Agreement are squarely Amongst the Issues to be Sent to the Arbitrator pursuant to the Delegation Clause.

Complete Care raises the same issues but also contends the Agreement applies to disputes that it is involved with because under paragraph fifteen, the parties intended the Agreement to bind Bey Lea and its "successors, assigns and agents . . . ."

## II.

Bey Lea argues the trial court found the Agreement was validly entered into in April 2017, and that plaintiffs did not challenge the validity of the delegation paragraph.  Bey Lea contends that under the delegation section, Maryann agreed to submit all issues to the arbitrator for resolution, including issues about "enforceability, validity, severability and/or interpretation of [the] Agreement . . . ."  This includes whether the Agreement applied to the 2018 admission.  Bey Lea's position is the court erred by concluding there was no agreement to arbitrate.

10

We review the validity of an arbitration agreement on a de novo basis. Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016). "[A]ny order either compelling arbitration . . . or denying arbitration shall . . . be deemed a final judgment of the court for appeal purposes." R. 2:2-3(a)(3). "[A]rbitration . . . is a favored means of dispute resolution." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). "State law governs not only whether the parties formed a contract to arbitrate their disputes, but also whether the parties entered an agreement to delegate the issue of arbitrability to an arbitrator." Morgan, 225 N.J. at 303. To determine enforceability, courts "apply ordinary state-law principles that govern the formation of contracts." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 307, 317-18 (2019) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "In dispensing even treatment to arbitration agreements, basic contract formation and interpretation principles still govern, for there must be a validly formed agreement to enforce." Id. at 307.

The FAA applies to nursing home arbitration agreements. However, it "simply requires that arbitration agreements be placed 'on an equal footing with other contracts' and enforced according to their terms." Morgan, 225 N.J. at 303 (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). "The

11

A-3976-19

statutory policies of the FAA and [the] New Jersey [Arbitration Act, N.J.S.A. 2A:23B-1 to -32] are in synchronicity." Kernahan, 236 N.J. at 319. The "initial inquiry" in determining enforceability is whether the contract is based on "mutual assent." Ibid. (quoting Atalese, 219 N.J. at 442). No "talismanic recitations" are required. Id. at 320 (citing Atalese, 219 N.J. at 445, 447). Under New Jersey law, the language of an arbitration agreement "must be clear and unambiguous that a [party] is choosing to arbitrate disputes rather than have them resolved in a court of law." Atalese, 219 N.J. at 447.

Defendants rest their arguments on the delegation clause. This type of clause in an arbitration agreement delegates authority to resolve certain issues to the arbitrator. See Rent-A-Center, 561 U.S. at 68-69. ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). A delegation provision that is not challenged can be enforced. See id. at 72 (explaining that "unless [the party opposing enforcement of the arbitration agreement] challenged the delegation provision specifically, we must treat [the provision] as valid . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator"). Defendants contend that because plaintiffs did not

12

challenge the validity of the delegation clause, the arbitrator — not the court — must decide whether the Agreement applies to the 2018 admission.

The proper analysis commences with the 2018 admission, not the delegation clause from the 2017 Agreement. Maryann simply did not sign an arbitration agreement for her second admission to Bey Lea. "[A]rbitration is a matter of contract." Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J. Super. 138, 148 (App. Div. 2008) (quoting AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)). There must be mutual assent to arbitrate. Kernahan, 236 N.J. at 319. Under the FAA, "[judges] retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386, 401 (3d Cir. 2020). Therefore, a judicial forum generally is appropriate "when a party rightfully resists arbitration on grounds that it never agreed to arbitrate at all." Ibid. Once a court makes the threshold decision that a valid agreement to arbitrate exists, it then considers the next issue, whether there is "clear and unmistakable" evidence that the parties intended to delegate arbitrability questions to the arbitrator. Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) (quoting First Options, 514 U.S. at 944).

13

We agree with the trial judge there was no agreement by Maryann to arbitrate issues arising from the 2018 admission. She did not sign a new agreement upon her admission in January 2018. The court did not err by concluding that there was no arbitration agreement for that admission. Without mutual agreement, there is no contract. "As a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered." Kernahan, 236 N.J. at 319 (citing Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538 (1953)).

By its express language, the 2017 Agreement did not apply to subsequent admissions. Paragraph two addressed the types of disputes that were subject to arbitration, describing them as "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement or the [p]atient's stay at the Center, including all prior stays at the Center . . . ." (Emphasis added). There is no reference in this language to subsequent admissions by the patient. Under the Agreement, the types of disputes could involve "interpretation and/or enforceability of this Agreement," and that is so "whether existing now or arising in the future . . . ." (Emphasis added). A straight-forward reading of this reference to "arising in the future" means a claim about the 2017 admission that

is asserted in the future, not about future admissions. This addressed timing; it did not add a new type of claim.

The Agreement provides that it is "intended to resolve by binding arbitration any dispute (<u>as described below</u>) related to <u>any</u> admission at the Center." (Emphases added). Defendants cite this language for their claim the Agreement applies to any future admission to the facility. However, their focus on "any admission" gives no credit to the reference in the same sentence to "any dispute (as described below)." That phrase logically refers to the "Disputes to be Arbitrated" section of the contract that follows immediately after. Section two — "Disputes to be Arbitrated" — does not refer to future admissions.

Defendants' arguments give no consideration to the Agreement's context or reason. "A court's role is to consider what is 'written in the context of the circumstances' at the time of drafting and to apply 'a rational meaning in keeping with the expressed general purpose.'" <u>Sachau v. Sachau</u>, 206 N.J. 1, 5-6 (2011) (quoting <u>Atl. N. Airlines, Inc. v. Schwimmer</u>, 12 N.J. 293, 302 (1953)). Defendants do not contend that Maryann intended to be readmitted to Bey Lea in the future once she left in April 2017. Under defendants' interpretation of the Agreement, Maryann would have given up any right to a jury trial for any future admission regardless of the number of times she was admitted just by being a

A-3976-19

patient for twenty days. Neither defendant argued that it was customary for new patients to sign just one agreement for all future admissions, or for an arbitration agreement entered into for a short-term stay to apply to a long-term residence. Therefore, there is no factual support in the record to conclude that Maryann assented to the Agreement's applicability for future admissions.

Even if the Agreement were interpreted as ambiguous about future admissions — which we do not conclude — the result would be the same. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." First Options, 514 U.S. at 944 (alterations in original) (quoting AT&T Techs., 475 U.S. at 649). Without such evidence, a court, not an arbitrator, should decide. Id. at 945.

Defendants cite Rent-A-Center, 561 U.S. at 72, and Morgan, 225 N.J. at 311, in support of their argument that the arbitrator must decide issues about arbitrability where the delegation clause is not challenged. However, neither of those cases involved the situation here. In both cases, there was an underlying arbitration agreement. In this case, there is no agreement for the 2018 admission.

We conclude that Judge Cresitello correctly denied the motion to compel binding arbitration of plaintiffs' claims related to the 2018 admission. The fact

16

that the delegation clause was not challenged in the Agreement does not control the outcome here.  Because there was no agreement to arbitrate issues arising from the 2018 admission, the Agreement's language had no bearing on the subsequent admission.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3976-19