**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0038-22

ALMA PAPETTI,

    Plaintiff-Appellant,

v.

ARTHUR J. PAPETTI,

    Defendant-Respondent.

_____

Submitted December 19, 2023 – Decided March 7, 2024

Before Judges Rose, Smith, and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1411-19.

Greenbaum, Rowe, Smith & Davis, LLP, attorneys for appellant (Mark H. Sobel and Barry Scott Sobel, of counsel and on the briefs).

Donahue, Hagan, Klein & Weisberg, LLC, attorneys for respondent (Stephanie Frangos Hagan and Kaitlyn A. Lapi, on the brief).

PER CURIAM

Plaintiff Alma Papetti appeals from an October 29, 2019 Family Part order denying her motion to set aside a premarital agreement. For the following reasons, we affirm.

I.

Plaintiff and defendant Arthur Papetti were married for twenty-six years prior to their divorce on June 18, 2019. Plaintiff met defendant while she was working at his family business as an accountant, and the two were married on November 20, 1993. The parties share three children, all emancipated.

Before the marriage, the parties executed an antenuptial agreement dated July 30, 1993. This agreement, and the circumstances surrounding its execution, are the subject of this appeal. The agreement waived plaintiff's entitlement to maintenance, alimony, and other marital rights upon termination of the marriage. In the event of a divorce, defendant would make specific cash disbursements to plaintiff based on two schedules incorporated into the agreement. Pursuant to the applicable schedule, plaintiff was entitled to $750,000 upon termination of the marriage, adjusted for inflation.

The agreement addressed representation by legal counsel and stated: "Each party has had the opportunity to obtain and has in fact obtained independent legal advice prior to the execution of this [a]greement and has been

2

fully advised as to his or her rights hereunder . . . ." Both parties' signatures were attached to the document.

On June 18, 2019, plaintiff filed a complaint for divorce and a motion to set aside the agreement and defendant cross-moved to enforce the agreement. After argument, the trial court entered an order denying plaintiff's motion and granting defendant's cross-motion. The court found that plaintiff: voluntarily signed the agreement; received a full accounting of defendant's assets; and failed to either make a prima facie case the agreement was unconscionable or show a genuine issue of material fact.

Plaintiff sought leave to appeal the interlocutory order, which we denied. Plaintiff then moved for reconsideration and relief from the order enforcing the agreement, which the trial court denied on February 21, 2020. We again denied plaintiff's ensuing motion for leave to appeal.

On July 25, 2022, the parties reached an agreement which resolved all pending issues surrounding the dissolution of their marriage but preserved plaintiff's right to appeal the validity of the agreement. Plaintiff then appealed, arguing the trial court erred when it: granted summary judgment despite the presence of genuine issues of material fact and incomplete discovery; and enforced an antenuptial agreement which did not comply with N.J.S.A. 37:2-38.

A-0038-22

## II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). "That standard mandates that summary judgment be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting R. 4:46-2(c)). When reviewing the trial court's factual determinations, this court owes deference to the Family Part's specialized experience in matrimonial matters. Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). However, "a question regarding the interpretation or construction of a contract is a legal one and our review is plenary, with no special deference to the trial judge's interpretation of the law and the legal consequences that flow from the established facts." Barr v. Barr, 418 N.J. Super. 18, 31 (App. Div. 2011).

"The basic contractual nature of matrimonial agreements has 'long been recognized.'" Sachau v. Sachau, 206 N.J. 1, 5 (2011) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). "Pre-nuptial agreements establishing post-divorce obligations and rights should be held valid and enforceable." Hawxhurst

4

v. Hawxhurst, 318 N.J. Super. 72, 80 (App. Div. 1998). "[P]rinciples governing property settlement agreements should be viewed as equally applicable to antenuptial agreements governing those same issues." Rogers v. Gordon, 404 N.J. Super. 213, 219 (App. Div. 2008) (internal quotations omitted).

## III.

### A.

We first consider plaintiff's contention that the trial court erred by granting summary judgment. Plaintiff disputes that she had an opportunity to consult with independent counsel, in that she did not meet or consult with her attorney before she signed the agreement. Plaintiff also posits that genuine issues of material fact exist regarding the negotiation and drafting of the agreement as well as her receipt of the complete agreement.

A court should grant summary judgment only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment or order as a matter of law." R. 4:46-2. While genuine issues of material fact defeat summary judgment, factual issues "of an insubstantial nature" do not. Brill v. Guardian

Life Ins. Co. of Am., 142 N.J. 520, 530 (1995) (quoting Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954)).

While plaintiff contends there are factual disputes regarding her selection of counsel and the details surrounding the negotiation and signing of the agreement, the record shows she produced no competent evidence to support that claim. We note the signed agreement includes an acknowledgment that the parties "each has had the right and opportunity to seek, and each has in fact obtained, independent legal advice . . . . Each party is fully satisfied with the services and advice of such counsel . . . ." Additionally, the signature page—which plaintiff admitted she read and signed—states: "[e]ach party . . . has been fully advised as to his or her rights hereunder." Plaintiff certified she "has fully read this [a]greement"; and "has been advised or had ample opportunity to be advised by legal counsel." Plaintiff relies on her own unsupported assertions but cannot rebut her written acknowledgment. Our review of the record shows no genuine issue of material fact regarding plaintiff's counsel's representation or her execution of the agreement.

Plaintiff next contends defendant did not produce evidence that: she retained her attorney; there exists any correspondence sent or received by her attorney regarding plaintiff; plaintiff received legal advice; and plaintiff ever

6

reviewed the other pages of the agreement. However, defendant need not rebut these claims. Since defendant produced the signed agreement, including plaintiff's certification on the signature page, there is no genuine issue of material fact created by plaintiff's absence of proof theory. See R. 4:46-2(c). The trial court's finding that there was no genuine issue of material fact on the various arguments raised by plaintiff was sound and supported by the record.

B.

We next consider plaintiff's contention that the agreement was not valid and enforceable under the law governing premarital and pre-civil union agreements. In New Jersey, premarital agreements are governed by the Uniform Premarital and Pre-Civil Union Agreement Act, N.J.S.A. 37:2-31 to -39. A properly executed premarital agreement is presumed valid unless the party seeking to set aside the agreement proves "by clear and convincing evidence," that:

> a. The party executed the agreement involuntarily; or
>
> b. The agreement was unconscionable at the time enforcement was sought; or
>
> c. The agreement was unconscionable when it was executed because that party, before execution of the agreement:

7

(1) Was not provided full and fair disclosure of the earnings, property and financial obligations of the other party;

(2) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided;

(3) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party; or

(4) Did not consult with independent legal counsel and did not voluntarily and expressly waive, in writing, the opportunity to consult with independent legal counsel.

d. The issue of unconscionability of a premarital or pre-civil union agreement shall be determined by the court as a matter of law. An agreement shall not be deemed unconscionable unless the circumstances set out in subsection c. of this section are applicable.

[N.J.S.A. 37:2-38.]

Plaintiff argues the trial court erred by enforcing the agreement despite its non-compliance with the requirements of N.J.S.A. 37:2-38. She tracks the statute to make several points in support of her position she did not: enter the agreement voluntarily; consult with independent counsel; receive a full and fair disclosure of defendant's financial obligations; waive her right to disclosure; and have adequate knowledge of defendant's property and other obligations. We

8

are not persuaded, and conclude the agreement complies with the requirements of N.J.S.A. 37:2-38.

Plaintiff first argues that she did not enter into the agreement voluntarily under subsection (a). She reprises her summary judgment arguments regarding involuntariness, and repackages those arguments in the context this subsection. This approach has no merit. We concluded plaintiff's proofs were insufficient to defeat summary judgment. It follows, on the same record, that plaintiff cannot show by clear and convincing evidence that her execution of the agreement was involuntary.

We turn to plaintiff's second point under subsection (c)(4) that she did not consult with independent counsel or waive her right to do so consistent with N.J.S.A. 37:2-38(d). Plaintiff asserts she never retained her attorney, never met with him prior to the agreement's execution, and does not recall receiving any legal advice from him. Again, we concluded plaintiff's proofs on this issue were insufficient to defeat summary judgment, and we find plaintiff cannot show by clear and convincing evidence that she did not consult with independent counsel or waive her right to do so. For these reasons, plaintiff's argument under subsection (c)(4) fails.

A-0038-22

Plaintiff contends in her third point that she did not receive a full and fair disclosure of defendant's assets in violation of subsection (c)(1). She makes three arguments in support of this contention. First, she states that "no explanation was provided to her" concerning what the schedules represented and no supporting documents were supplied to her at the time. Second, she argues the disclosure did not include any reference to financial obligations as required by statute. Finally, plaintiff asserts that she did not effectively waive disclosure or have adequate knowledge of defendant's property or obligations. We look to our well-settled jurisprudence.

We concluded in Orgler v. Orgler that full and fair disclosure is not satisfied when there are no schedules of assets attached to the agreement and neither party knows the true value of defendant's holdings. 237 N.J. Super. 342, 350 (App. Div. 1989). In In re Estate of Shinn, we concluded there existed clear and convincing evidence of inadequate disclosure when the disclosure omitted accurate values of interest in several businesses, yearly income, value of union benefits, and cash holdings. 394 N.J. Super. 55, 63-65 (App. Div. 2007). Both cases stand for the proposition that plaintiffs cannot waive their right to disclosure if they do not have adequate knowledge of defendant's financial assets. Id. at 64; Orgler, 237 N.J. Super. at 342.

A-0038-22

The record shows plaintiff received a full and fair disclosure of defendant's assets. Plaintiff acknowledged reviewing both schedules before signing the agreement. Schedule A contained defendant's interest in family business holdings, and the value of various investment accounts, cash holdings, real estate, and other property and annual income. Plaintiff's assertion that she could not have understood the disclosure is unpersuasive given her background in finance and accounting. Plaintiff submitted no proofs to support her assertions that the disclosure was inaccurate or deficient. While plaintiff accurately notes the absence of any disclosure of financial obligations owed by defendant, plaintiff failed to offer proof that such obligations existed. Consequently, plaintiff has not met her burden to show by clear and convincing evidence the financial disclosure was inadequate.

Even if plaintiff could show that she did not receive a full disclosure of defendant's assets, she voluntarily signed the express waiver contained in the agreement and relinquished her right to additional disclosure. The waiver states that "[e]ach party hereby voluntarily waives . . . all right to disclosure of such property, assets, and income of the other party beyond the disclosure provided."

Plaintiff argues she could not have waived disclosure because the agreement was unenforceable, and she didn't have the opportunity to consult

11

with counsel. However, these circular arguments fall short. Plaintiff's voluntary execution of the agreement precludes the argument that she did not read or understand its terms. Similarly, plaintiff's waiver of the opportunity to consult with counsel precludes that challenge to her waiver of additional disclosure.

There is nothing in the record to support plaintiff's claims about the validity of the agreement as executed. She relies solely on unsupported assertions to buttress her claims, which are undermined by her own actions. The trial court correctly found the agreement valid and enforceable as a matter of law, and we discern no error.

To the extent not addressed, plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0038-22