**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2818-24

TAKEA WILLIAMSON,

 Plaintiff-Respondent,

v.

KATHERINE WALKER,

 Defendant-Appellant.

_____

Submitted March 17, 2026 – Decided April 1, 2026

Before Judges Firko and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. SC-000147-24.

Katherine Walker, self-represented appellant (Elizabeth D. Burke and Elizabeth M. Foster-Fernandez, on the brief).

Respondent has not filed a brief.

PER CURIAM

This one-sided appeal arises from a dispute concerning a contract[1] for the sale of a female dog—a German Shephard named "Koa," from plaintiff Takea Williamson to defendant Katherine Walker. Plaintiff sold Koa to defendant through Craigslist for $200. Plaintiff contended that defendant agreed to return Koa if plaintiff ever wanted the dog back.

Plaintiff transferred Koa to defendant and was paid $200 via Zelle. Two days later, plaintiff informed defendant she made a "huge mistake" and requested return of Koa. Defendant refused to return Koa. Plaintiff filed suit seeking specific performance for the return of Koa.

Following a bench trial, defendant appeals from the April 8, 2025[2] Special Civil Part order requiring her to return Koa to plaintiff as lawful owner. After reviewing the record in light of defendant's arguments and governing legal principles, we affirm.

---

[1] We use the terms "contract" and "agreement" interchangeably in our opinion.

[2] Defendant does not appeal from the trial court's final April 22, 2025 order pertaining to the transition of Koa back to plaintiff and reimbursement of expenses related to Koa.

A-2818-24

I.

Factual Background

We discern the following pertinent facts and procedural history from the record. Plaintiff had owned Koa for a year and several months when she decided to sell her in January 2024. On January 27, 2024, defendant responded to plaintiff's Craigslist advertisement. The parties messaged each other and agreed on a purchase price of $200. On February 6, 2024, the parties met at Roosevelt Park in Edison to exchange Koa after payment was made. Plaintiff testified at trial that during this encounter, the parties agreed if plaintiff "ever wanted Koa back[,] she would be more than willing [to] giv[e] her back." Both parties owned other dogs at the time.

Over the next two days, the parties exchanged numerous text messages regarding Koa. Plaintiff sent defendant proof of Koa's rabies vaccination. Defendant took Koa to a veterinarian, who diagnosed her with allergies. Approximately two days after the exchange, on February 9, 2025, plaintiff texted defendant at 12:20 a.m. that she made a "huge mistake" and hoped defendant "could find it in her heart to understand" and return Koa to her. Plaintiff offered to reimburse the $200 amount defendant paid for Koa and any veterinarian bills she incurred. Defendant requested "a couple of days to think

3

about it" and wanted to speak to her boyfriend, Paul Colontino.  Plaintiff sent defendant information pertaining to Koa's registration as her emotional support animal and registration with the American Kennel Club.

Four days later, on February 12, 2024, plaintiff sent defendant a follow-up text message inquiring whether she had spoken to Paul.  Defendant replied she still had not spoken to Paul, but she was "okay with bringing Koa back to her pack" and would "[let her] know later tonight."  Plaintiff followed up with her further over the next two days.  On February 14, 2024, defendant responded she would not return Koa to plaintiff.  Defendant stated:

> [P]aul does not want to return Koa and [I] am on his side about it as well.  I have received two calls from [D]anny[3] and received the [Z]elle payment of $200, that [I]'ll be sending back after this text.  [I]'m sorry that this isn't what you want to hear.  [I] would greatly appreciate if you and [D]anny do not reach out again pertaining [to] [K]oa.  Once again, I am very sorry.

### The Litigation

On February 26, 2024, plaintiff filed a complaint against defendant seeking specific performance for Koa to be returned to her.  Plaintiff alleged the parties had an "oral agreement" and a "few text messages" that proved if she ever wanted Koa back, defendant "would be more than willing" to do so.

---

[3] Danny is Koa's co-owner.

A-2818-24

Plaintiff stated in her complaint her other dog—Kairo, "was not doing well without Koa," that he was "worse" than she thought, and Koa's absence was affecting both of them "immensely."

A virtual trial date was scheduled for May 14, 2024. Plaintiff failed to appear, and the matter was dismissed. Two days later, plaintiff filed a motion to vacate the dismissal and reinstate her complaint claiming she had difficulty locating the meeting identification and password until after the calendar call. On July 3, 2024, plaintiff's motion was granted. A trial date was later scheduled for October 29, 2024.

On October 7, 2024, plaintiff filed a motion to transfer the matter to the Chancery Division and sought a declaratory judgment declaring she is Koa's owner. Plaintiff also requested specific performance for Koa's return. Plaintiff alleged a contract was formed but "recission" occurred on "defendant's end."

Defendant retained counsel, who filed a notice of cross-motion to dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e), or in the alternative, based on improper venue under Rule 4:3-1(a)(4)(e). On October 18, 2024, plaintiff's motion to transfer the matter to the Chancery Division was denied. A new trial date was scheduled in the Special Civil Part for January 21, 2025. For reasons not

5

explained in the record, the trial was held on April 8, 2025.  Defendant filed an amended cross-motion to dismiss the complaint, which was denied.  Defendant's prior counsel withdrew from the case, and defendant retained new counsel to represent her at trial.

## The Trial

Plaintiff testified she created a Craigslist advertisement to re-home Koa. Plaintiff stated defendant responded, and plaintiff met her at Roosevelt Park to transfer Koa.  Plaintiff was pregnant at the time.  According to plaintiff, she explained her "situation" to defendant and that she was re-homing Koa "with the understanding that [defendant] would give [Koa] back to [her] if [she] ever . . . wanted her back."  Plaintiff explained defendant agreed to these terms.

Plaintiff testified defendant originally agreed to return Koa "back to her pack," and would look at local shelters for another dog.  Plaintiff offered to pay the $200 back to defendant, pay for veterinary expenses, and help her find a "replacement dog."  Plaintiff testified defendant did not want the puppy she offered to her and "was looking for a more adult dog."

Plaintiff stated she needed Koa back because she is her "emotional support animal" and is "registered" to her.  Plaintiff testified she and her male dog Kairo

6

were "not doing okay without Koa" and "[d]ogs belong in a pack and that's what we had." Plaintiff elaborated:

> [I]f ever I was crying or going through a hard time Koa would come and like put her weight on me. So, it kind of acts as, it's weight. So, it gives comfort and stops me from crying. So . . . her goal is to basically lick my face to the point where I don't cry anymore. And I feel that it's been really hard thus far without her, especially going throughout my entire pregnancy without her.

Plaintiff explained that Koa is registered to her for flying and as an emotional support animal if plaintiff needed to bring her to the mall or a store. On cross-examination, plaintiff testified her decision to sell Koa resulted from her being "under immense stress and not thinking clearly due to hormonal changes." Plaintiff did not call any witnesses to testify on her behalf and did not offer any items into evidence.

Defendant presented testimony from Gail D'Aurelio, her psychotherapist, who is a licensed marriage and family therapist. D'Aurelio testified she has been defendant's therapist for over ten years. D'Aurelio stated defendant has been diagnosed with trichotillomania, an anxiety disorder that falls under obsessive compulsive disorder, post-traumatic stress disorder, and has abandonment issues. According to D'Aurelio, defendant benefits from having an emotional support animal, and Koa helps her with "self-confidence" due to anxiety caused

7

by school and employment. D'Aurelio opined that defendant's capability of dealing with conflict is "horrible," and she is "extraordinarily" conflict avoidant.

The trial court questioned D'Aurelio how an emotional connection between defendant and Koa could develop within two days contrasted with the period of time spent with the dog until trial. D'Aurelio answered defendant can "over attach," or have an "almost instant attachment," which "someone typically might not have."

Defendant testified it was her intention to "take [Koa] home and to have her be a service dog." Defendant denied ever telling plaintiff she could have Koa back if requested, and stated, "I wouldn't say that if I had the full intention for Koa to be my service dog moving forward."

The trial court questioned defendant why she did not want to give Koa back considering plaintiff requested her back only "two days after" the transfer and communicated she had "made a big mistake," emphasizing "it would [have] be[en] nice" to give the dog back. Defendant responded it was "the first time in a very long time" she felt "safe." Defendant testified she registered Koa as her emotional support animal the day after retrieving her and took Koa to work with her. Defendant claimed she did not register Koa as a service animal because she could not afford to.

8

In response to another question from the trial court, defendant explained she "felt really pressured" to return Koa because plaintiff was pregnant, Kairo was not doing well without Koa, and defendant "would never want to make someone or any dog feel that way." Defendant testified that from her perspective, she thought plaintiff "kind of already made the decision for [her]," and Danny threatened to take her to court. She stated plaintiff sent the $200 back to her, but she "was informed to not get into a ping pong war" with the money. Defendant requested the trial court to maintain Koa in her care and ownership.

On cross-examination, defendant recognized she told plaintiff she would "soften" Paul up to agree with her initial decision to return Koa and would look for another adult dog at local shelters. Defendant moved the Craigslist advertisement, text messages, Craigslist messages, an invoice for Koa's spay, a Cranbury Animal Hospital record, and a Vetco visit record into evidence.

That day, the trial court rendered an oral decision and granted plaintiff custody of Koa. The trial court noted the case took "way too long [to] be . . . brought to a resolution," and such delay brought "an emotional complexity" to the case that "perhaps wouldn't have been so serious" had the matter been heard more expeditiously. The trial court reasoned:

custody of a dog is guided by the principle that pets are considered personal property. However, . . . there is a special subjective value that dogs provide to their owners, which should . . . properly distinguish it in the [c]ourt's evaluation from just . . . an item that we would typically describe as property.

The trial court observed that given a pet's "intrinsic and sentimental worth," a court can "consider factors such as intrinsic value, sentimental attachment[,] and any agreements made between the parties when determining custody." The trial court determined:

> the nature of the agreement of . . . plaintiff selling the dog[,] according to . . . [her], included a right for her to in essence ask for the return of the dog so long as, although it wasn't explicitly stated, but it would be the only fair inference, so long as the request for the return of the dog was made within a reasonable time period.
>
> . . . [D]efendant, on the other hand, states that she was just buying a dog. And that there was no right to return and that it was her intent in essence to buy the dog for emotional support. This brings a complexity to the situation of this transaction, . . . it's beyond dispute that . . . defendant has emotional issues and has been treating for those issues . . . .
>
> But to this [c]ourt, . . . defendant's emotional issues become core to the case, because due to her attachment disorder, she became much more attached to Koa than a "reasonable person," . . . us[ed] . . . in its legal context, . . . [one] who did not have an attachment disorder. And the significance of that is then the failure

10

to then reveal that basically then would undermine what this [c]ourt has believed [is] a core issue of the case.

And that is <u>was there a right for a return of the dog</u>? And then would . . . plaintiff have offered the dog for sale to the defendant if she knew that there was this attachment disorder? So, [the court] find[s] [that] based on all of the evidence . . . as presented to this [c]ourt[,] that [it] believe[s] there was an agreement. . . . that . . . plaintiff could have the dog returned. . . . both parties were going through emotionally challenging time[s], at the time . . . that Koa was transferred. . . .

[(Emphasis added).]

The trial court held there was never an agreement between the parties as to the permanent transfer of Koa because defendant had a "duty to reveal" her attachment disorder to plaintiff "in light of the fact that there was discussion about return of the dog." The trial court reasoned defendant's failure to disclose her attachment disorder to plaintiff "completely undermine[d]" her alleged version of the agreement.

The trial court found plaintiff is the "lawful owner" of Koa and requested the parties return on April 17, 2025 to agree to a transition plan. As interim relief, the trial court ordered plaintiff to have visitation with Koa from 10:00 a.m. to 4:00 p.m. at Roosevelt Park one day per week. The trial court entered a memorializing order. Defendant's counsel sought a stay, which was denied. The

11

trial court granted defendant's request to submit proof of expenses she incurred for Koa.

### The Return Hearing

On April 22, 2025, the trial court conducted a hearing to address the transition of Koa back to plaintiff and to consider defendant's request for reimbursement of costs. Defendant requested to keep Koa until the following week so she could ensure she finished her medication, which was denied.

The trial court ordered defendant to transfer Koa "this Thursday at 10:00 a.m. at the location where the two previous transfers were made," and thereafter, plaintiff was granted "sole custody" of Koa. The trial court denied defendant's request for reimbursement of expenses but permitted her to keep the $200 Zelle payment because the $177.84 defendant spent on Koa's medical care post-trial made it a "wash." A memorializing order was entered. This appeal followed.

Before us, defendant argues:

> (1) the trial court erred when it found there was no valid agreement between the parties;
>
> (2) plaintiff's offer to refund defendant for the return of Koa and to find her an alternative dog was never accepted and thus no additional agreement was formed;
>
> (3) in the alternative, if the parties did agree that plaintiff could demand the return of Koa at any time, the agreement was unconscionable;

12

A-2818-24

(4) the trial court erred when it found that defendant had a duty to disclose her attachment disorder to plaintiff prior to purchasing Koa;

(5) the trial court erred in finding no fault existed as to the delay in time between the filing of the complaint and trial; and

(6) if the matter is remanded, it should be assigned to a different judge.

## II.

In a non-jury case, "[a]ppellate courts defer to a trial court's factual findings when they are 'supported by adequate, substantial, credible evidence.'" N.J. Div. of Child. Prot. & Permanency v. B.P., 257 N.J. 361, 373 (2024) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "That deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" C.R. v. M.T., 257 N.J. 126, 139 (2024) (quoting MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007)). "[B]ecause it has the opportunity to make first-hand credibility determinations about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007)).

Because contract interpretation is a question of law we review de novo, we "pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co., 258 N.J. 286, 303 (2024) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)). Accordingly, "[w]ords and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose." Boyle v. Huff, 257 N.J. 468, 478 (2024) (quoting Republic Bus. Credit Corp. v. Camhe-Marcille, 381 N.J. Super. 563, 569 (App. Div. 2005)).

Furthermore, as a general matter, "[c]ourts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances[,] and the underlying purpose of the contract.'" In re County of Atlantic, 230 N.J. 237, 254 (2017) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). "A reviewing court must consider contractual language 'in the context of the circumstances at the time of drafting and . . . apply a rational meaning in keeping with the expressed general purpose.'" Ibid. (omission in original) (quotation marks omitted) (quoting Sachau v. Sachau, 206 N.J. 1, 5-6 (2011)).

"'[I]f the contract into which the parties have entered is clear, then it must be enforced' as written." Ibid. (alteration in original) (quoting Maglies v. Est. of Guy, 193 N.J. 108, 143 (2007)). However, "where an agreement is ambiguous, 'courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation.'" Id. at 255 (quoting County of Morris v. Fauver, 153 N.J. 80, 103 (1998)).

The parol evidence rule requires integrated agreements,

> may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage of trade ([N.J.S.A.] 12A:1-205) or by course of performance ([N.J.S.A.] 12A:2-208); and (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.
>
> [N.J.S.A. 12A:2-202 (emphasis added); see also U.C.C. § 2-202.]

Our Supreme Court, it bears noting, has embraced an expansive view of parol evidence, stemming from Professor Corbin's view that "[a]ntecedent and surrounding factors that throw light upon . . . [the meaning of the contract] may be proved by any kind of relevant evidence." Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 268-69 (2006) (alterations in original) (omission in original)

(quoting 3 Corbin on Contracts § 579 (West 1960)); see also Restatement (Second) of Conts. § 214 (Am. L. Inst. 1981) ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . the meaning of the writing, whether or not integrated.").

With that broad approach in mind, New Jersey courts "consider all of the relevant evidence that will assist in determining the intent and meaning of the contract[,]" which can "include consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." Conway, 187 N.J. at 269 (quoting Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 221 (1979)).

III.

Defendant contends that once she paid plaintiff and took possession of Koa, the contract was completed, and any term allowing plaintiff to change her mind is unsupported by the facts and contract law. Defendant asserts that "[a] contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested," quoting Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 440 (App. Div. 2016). For the

first time on appeal, defendant cites to New Jersey's counterpart to the Uniform

Commercial Code (UCC):

> [t]he express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade.
>
> [N.J.S.A.12A:2-208(2) (emphasis added).]

Defendant maintains the express terms of the parties' "agreement" were reasonable and consistent with their performance of those terms, and the trial court should have construed them in that way. N.J.S.A.12A:2-208(2). She contends nowhere in the parties' written communications did it state that plaintiff had the ability to rescind the contract at any time or request Koa's return. Defendant argues the trial court should have enforced the agreement as written in the various electronic communications between the parties. See Skuse v. Pfizer, Inc., 244 N.J. 30, 54 (2020) (explaining "an electronic communication may be a clear and effective method of communicating proposed contract terms").

Defendant also claims that her caring for Koa demonstrates she is the rightful owner. Defendant points to the record showing, she took Koa to two

different veterinarians within the first two days of having her, registered Koa as an emotional support animal, and prepared her home for Koa's arrival by spending money on supplies. Defendant contends she would never have agreed to give Koa back at any time due to her need for an emotional support animal.

## A.

## Contract Formation

"'[T]he fundamental elements of contract formation' are 'mutual asset, offer and acceptance, [and] consideration.'" Fazio v. Altice USA, 261 N.J. 90, 103 (2025) (alterations in original) (quoting Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 65 (2024)). It "must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting W. Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). Further, "[t]he parties are bound by the contracts they make for themselves, with the understanding that 'a meeting of the minds is an essential element to the valid consummation' of any agreement." Barr v. Barr, 418 N.J. Super. 18, 32 (App. Div. 2011) (quoting Ctr. 48 Ltd. P'ship v. May Dep't Stores Co., 355 N.J. Super. 390, 406 (App. Div. 2002)).

Applying a de novo review, we conclude the trial court correctly found the "right to return" term was properly integrated into the parties' negotiations based on plaintiff's credible testimony. By way of background, plaintiff's Craigslist advertisement was the original offer for the sale of Koa, which stated "[two] y[ea]r old all black [G]erman shepherd female for sale. She needs a good home and requires an active lifestyle. Knows all basic obedient commands. Sit. Stay. Down. Eat/drink. Break/ok. Paw. Serious inquires only please!"

Thereafter, plaintiff's offer via email to defendant on January 27, 2024, asking "$200?" was both a rejection of her original offer and introduction of a new offer. Defendant then sent counteroffers and ultimately plaintiff accepted defendant's $200 counteroffer.

We concur with the trial court's conclusion that the "right to return" was integrated into the original contract, which it found was discussed during the transfer of Koa at Roosevelt Park on February 6, 2024—during the parties' performance of the contract. Because plaintiff elected to exercise her right to have Koa returned within a reasonable time, we are satisfied based upon our de novo review, the trial court did not err in determining plaintiff was the dog's legal owner. The record supports that determination.

A-2818-24

B.

Statute of Frauds

We are likewise unpersuaded by defendant's statute of frauds (SOF) argument.  Defendant first acknowledges the contract between the parties fell outside of the writing requirement required by the SOF, since the contract involved a sale of goods,[4] personal property, for less than $500—as the price negotiated for the sale of Koa was $200.  Defendant contends a contract for the sale of goods with an "intrinsic value" of over $500 requires a writing to be valid.  N.J.S.A. 12A:2-201(1) states:

> a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . .  A writing is not insufficient because it omits or incorrectly states a term agreed upon[.]
>
> [N.J.S.A. 12A:2-201(1).]

Defendant asserts the emails and text messages exchanged by the parties evidences a "writing," that includes the material terms of the contract, to satisfy the SOF writing requirement.  However, defendant is misguided due to the lack

---

[4]  "'Goods' means all things . . . which are movable at the time of identification to the contract for sale."  N.J.S.A. 12A:2-105(1).

of signature on any of the documents.  See N.J.S.A. 25:1-5 (requiring such contract to be "signed by the party to be charged therewith").  In these circumstances, the SOF does not apply, and we reject defendant's argument.

C.

Parol Evidence Rule

Next, we address defendant's contention that plaintiff's offer to refund defendant for the return of Koa and to find her an alternative dog was never accepted, and no additional agreement was formed.  According to defendant, the trial court erred in considering extrinsic parol evidence—the parties' text messages and plaintiff's trial testimony—on the issue of whether the "right to return" term was a modification to the original contract.

The parol evidence rule is a rule of substantive law and is not a rule of evidence.  Conway, 187 N.J. at 268.  "In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document."  Ibid.; see Restatement (Second) of Conts. § 213 (Am. Law Inst. 1981).  Our Court, however, has adopted the "expansive view of the parol evidence rule," endorsed in the Restatement (Second) of Contracts, Conway, 187 N.J. at 268-69, that permits:

> a broad use of extrinsic evidence to achieve the ultimate
> goal of discovering the intent of the parties.  Extrinsic

21

evidence may be used to uncover the true meaning of contractual terms.  It is only after the meaning of the contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract.

[Id. at 270.]

"Where the parties have made [a] writing the sole repository of their bargain, there is the integration which precludes evidence of antecedent understandings and negotiations to vary or contradict the writing.  This is in essence the 'parol evidence rule' . . . ."  Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 303 (1953); see also Filmlife, Inc. v. Mal "Z" Ena, Inc., 251 N.J. Super. 570, 573 (App. Div. 1991).

A determination as to whether a contract is completely integrated is based upon "the conduct and language of the parties and the surrounding circumstances.  The document alone will not suffice."  Schwimmer, 12 N.J. at 304 (quoting 9 Wigmore on Evidence, §§ 2413, 2430, 2431 (Chadbourn rev. 1981)).  Whether there is an integrated agreement between the parties, however, is an issue the court must decide "preliminary to determination of . . . [the] application of the parol evidence rule."  Restatement (Second) of Conts. § 209.  Where the court determines there is only partial integration of an agreement in a written contract, a court can properly consider the parol evidence to determine

22

the complete terms of the agreement. <u>Zone Co. v. Serv. Transp. Co.</u>, 137 N.J.L. 112, 118-19 (Sup. Ct. 1948); <u>Restatement (Second) of Conts.</u> § 210.

First, defendant's argument that N.J.S.A. 12A:2-208 permits a court to construe the express terms of an agreement in conjunction with the parties' course of performance and course of dealing if all terms are reasonable and consistent is unavailing. N.J.S.A. 12A:2-208 allows a court to determine whether a combination of these factors is unreasonable and thereby rely on the express terms of the parties' agreement. However, here there was only one occasion for performance—the exchange of Koa—and no other course of performance within the contract or previous dealings between the parties for the trial court to consider.

Second, the record supports a finding that the parties' contract was partially, not completely, integrated. <u>See</u> <u>Restatement (Second) of Conts.</u> § 213 (Am. L. Inst. 1981) ("Where an agreement is partly oral and partly written, the writing is at most a partially integrated agreement."). Thereafter, the trial court's interpretation of the extrinsic evidence was predominantly based on its determination of the witnesses's credibility. The trial court found plaintiff to be a more credible witness than defendant. Contrary to defendant's contention, the

trial court was not required to explicitly use the word "credibility" in order to make credibility findings.

Moreover, we only disturb the credibility determinations of the trial court if "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Metuchen Sav. Bank v. Pierini, 377 N.J. Super. 154, 161 (App. Div. 2005) (citation and internal quotation marks omitted) (quoting Rova Farms Resort, Inc. v. Invs. Ins., 65 N.J. 474, 484 (1974)). We owe deference to the trial court's credibility determinations because it "'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

Importantly, there was adequate, substantial, and credible evidence in the record to support the trial court's credibility findings. For example, it recognized the text message plaintiff sent on February 9 evidenced the "right to return" term: "I was really hoping that you meant what you said about giving her back if I had ever changed my mind." Moreover, this text message was later corroborated by plaintiff's trial testimony, and defendant acknowledged this prior statement during her cross-examination. Further, the record demonstrated

inconsistent positions taken by defendant and her recognition of such inconsistencies at trial. The trial court therefore found this weighed against her credibility.

In making its decision, the trial court also inquired as to the amount of time Koa spent with each of the respective parties. The record supports the finding that plaintiff purchased Koa, registered her as an emotional support animal, trained her substantially, and raised her from birth. See Pippin v. Fink, 350 N.J. Super. 270, 273-74 (App. Div. 2002) (considering the party who purchased, registered, and cared for the dog as well as "the actions, attitudes, and understanding of the suggested owner" when determining a dog's rightful owner). Thus, we reject defendant's argument.

Alternatively, even if the trial court found the "right to return" term was simultaneously created with or subsequent to performance of the contract, a modification of the contract made by the parties to include this term would still be valid and enforceable. See N.J.S.A. 12A:2-209(1) ("[a]n agreement modifying a contract . . . needs no consideration to be binding."). See also Oscar v. Simeonidis, 352 N.J. Super. 476, 484 n.3 (App. Div. 2002) ("under the [UCC], as enacted in New Jersey, there is no requirement of new and additional consideration to support the modification of an agreement.").

A-2818-24

D.

Reasonable Time Period

We next address defendant's challenge to the trial court's determination that the "right to return" term within the parties' contract implied plaintiff could invoke such term "within a reasonable time period." Defendant argues the trial court modified the parties' alleged agreement absent evidence, adding a "reasonable" timeframe to the agreement, whereas plaintiff simply alleged she could have asked for Koa back at any time. In defendant's view, the trial court's ruling contradicts the widespread notion that "[c]ourt[s] will not write better or more favorable contracts for parties than they have themselves seen fit to make." JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 167 (App. Div. 2022) (quoting Mancuso v. Rothenberg, 67 N.J. Super. 248, 254 (App. Div. 1961)).

The critical flaw in defendant's argument is that the trial court properly considered extrinsic evidence as stated and rested its decision on the intent of the parties, the express terms of the contract, surrounding circumstances, and the underlying purpose of the contract. See JPC Merger Sub LLC, 474 N.J. Super. at 160 (quoting In re County of Atlantic, 230 N.J. at 254). Contrary to defendant's argument, the trial court did not re-write the parties' contract. Given

26

the parties' conduct, especially plaintiff's attempt at exercising the term approximately two days after the transfer, the trial court correctly determined plaintiff's "right to return" of Koa was exercised "within a reasonable period of time."

E.

Breach of Contract

Next, defendant contends the actions of the parties themselves do not support plaintiff's ability to rescind the contract at any time. Defendant maintains that because the "right to return" term was never a part of the contract between the parties to begin with, the trial court's decision declaring plaintiff as Koa's legal owner operates as a recission of the contract. Defendant asserts contract law only permits "material breaches," where "materiality" is defined as "substantial impairment." See Ramirez v. Autosport, 88 N.J. 277, 289 (1982) (quoting Herbstman v. Eastman Kodak Co., 68 N.J. 1, 15 (1975) (Conford, J., concurring)) ("General contract law permits rescission only for material breaches," and "materiality" is defined "in terms of substantial impairment."); see also N.J.S.A. 12A:2-608.

Defendant does not argue the standard for breach of contract under the UCC, but rather claims there is a rescission of the contract. However, defendant

27

relies on the term "material breach," which implies she is arguing a breach of contract. Recission is not the proper remedy here, as the definition of a rescission of a contract under the UCC is defined as a buyer's "revocation of acceptance." GM Acceptance Corp. v. Jankowitz, 216 N.J. Super. 313, 332-33 (App. Div. 1987). See N.J.S.A. 12A:2-106(4) ("'Cancellation' occurs when either party puts an end to the contract for breach by the other."). Defendant does not make this distinction. Here, the trial court properly found the "right to return" term was integrated within the parties' contract. Therefore, no rescission of the contract occurred when the trial court ordered plaintiff as the legal owner of Koa, and we reject defendant's claim.

Lastly, defendant argues that because the "right to return" term was not included in the parties' initial written communications, plaintiff's request for Koa's return was an "offer" to form a second contract between the parties. Defendant avers that her inability to reject plaintiff's offer immediately and unequivocally was explained during the trial, when both she and her therapist explained that defendant is "conflict avoidant" and has difficulty prioritizing her own needs above others. Defendant challenges the trial court's finding that her testimony regarding her difficulty with conflict and her attachment disorder as it relates to Koa was "credible" and yet ruled in plaintiff's favor.

28

The record does not support defendant's argument, as it demonstrates she accepted the offer by way of text message when she stated, "I am okay with bringing Koa back to her pack. I was planning on talking to Paul tonight." Thus, the acceptance of plaintiff's request was not contingent on Paul's approval, as defendant attempts to argue, because her statement shows she was merely preparing to tell Paul her decision, who was not a party to the contract. Moreover, defendant's subsequent messages, stating "[Paul] doesn't and won't hate you. Paul is a very understanding person . . . it's hard but [I]'ll soften him up," contradicts her argument.

F.

Unconscionability

In the alternative, defendant contends if we find that the "right to return" term was a part of the parties' original contract, then the agreement is "unconscionable" and cannot stand. Defendant asserts the alternative decision should be the contract or any clause of the contract to have been unconscionable at the time it was made and therefore the contract is unenforceable. Defendant maintains that "excessively disproportionate terms" is a factor in determining if an agreement is unconscionable. N.H. v. H.H., 418 N.J. Super. 262, 284 (App. Div. 2011). In support of her argument, defendant asserts that while pets are

considered personal property and chattel, they are items of "special subjective value" that "cannot be partitioned or sold without hardship or violation of public policy." Houseman v. Dare, 405 N.J. Super. 538, 542-44 (App. Div. 2009).

Defendant argues both parties testified regarding Koa's ability to offer comfort as an emotional support animal and were both experienced pet owners who knew the special subjective value pets provide. Consequently, defendant submits this is evidence that an agreement whereby she would purchase Koa, become attached to her, love her, care for her, provide for her, and then be forced to tender her back to plaintiff is "absurd," and cannot stand. Defendant contends the trial court's addition of the "reasonable time" frame into the parties' contract permitted it to overlook the "unconscionability" of the agreement.

Defendant adds that the laws governing a sale of a dog by a pet dealer in this State focus on the rights of the buyer to return an animal to the seller if the animal turns out to be unfit for purchase and does not provide the seller with the right to rescind a sale due to "seller's remorse." See N.J.A.C. 13:45A-12.1 to -12.3 (the Act). Maguire v. Mohrmann, 397 N.J. Super. 103, 108 (App. Div. 2007). Defendant urges that plaintiff should be deemed a "pet dealer" under the Act because she is "a[] person engaged in . . . the ordinary course of business in sale of animals for profit to the public," with animal defined as a "dog or cat."

30

N.J.A.C. 13:45A-12.1. Defendant additionally relies on the Pet Purchase Protection Act, N.J.S.A. 56:8-92 to -97, which is applicable to pets purchased from a pet shop, contending similarly the statute focuses on the rights of the consumer, and not the rights of the seller. Maguire, 397 N.J. Super. at 103. Defendant asserts both statutes are consistent with the UCC's tendency to "favor" the buyer in a sale of goods transaction. See N.J.S.A. 12A:2-711 (a buyer can cancel a contract or recover for loss caused by nonconforming or defective goods); Ramirez, 88 N.J. at 286 ("the buyer has a right of rejection for any nonconformity".).

"General state contract principles authorize courts to invalidate contracts that contain terms that are unconscionable and in violation of public policy." Skuse, 244 N.J. at 164 (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 356 (1992)). N.J.S.A. 12A:2-302(1) governs the unconscionability of contracts, which states that if a court "finds the contract or any clause of the contract to have been unconscionable at the time it was made[,] [it] may refuse to enforce the contract," "enforce the remainder of the contract without the unconscionable clause," or "limit the application of any unconscionable clause as to avoid any unconscionable result." However, this section also states, "[w]hen it is claimed or appears to the court that the contract

or any clause thereof may be unconscionable[,] the parties shall be afforded a reasonable opportunity to present evidence as to its <u>commercial setting, purpose[,] and effect to aid the court in making the determination</u>."  <u>Ibid.</u>

Unconscionability consists of two elements, procedural and substantive. <u>D.M.C. v. K.H.G.</u>, 471 N.J. Super. 10, 27 (App. Div. 2022).  Procedural unconscionability consists of unfairness in contract formation, where substantive unconscionability concerns "harsh or unfair one-sided terms." <u>Muhammad v. Cnty. Bank of Rehoboth Beach, Del.</u>, 189 N.J. 1, 15 (2006); <u>Rodriguez v. Raymours Furniture Co.</u>, 225 N.J. 343, 366 (2016).

Our Court has "exercised [this] authority to strike down unconscionable contracts terms on public-policy grounds." <u>Skuse</u>, 244 N.J. at 64.  Accordingly, it has identified what typically defines an unconscionable term or contract.  In <u>Cox v. Sears Roebuck & Co.</u>, 138 N.J. 2, 18 (1994), our Court stated:  "[t]he standard of conduct that the term 'unconscionable' implies is lack of 'good faith, honesty in fact[,] and observance of fair dealing.'"  Even prior to this explanation, our Court suggested a similar explanation, noting "the prime ingredient of deception or an unconscionable commercial practice" is "[t]he capacity to mislead." <u>Fenwick v. Kay Am. Jeep, Inc.</u>, 72 N.J. 372, 378 (1977).

Here, we are satisfied the "right to return" term is not procedurally or substantively unconscionable. For instance, our Court has refused to enforce contracts due to unconscionability when such contracts are procedurally deficient against our State's public policy. See e.g., Muhammad, 189 N.J. at 22 (declining to enforce an adhesion contract stemming from unequal bargaining power); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 404 (1960) (declining to enforce an exculpatory clause within an automobile manufacturer's contract, as buyer had "no real freedom of choice," to enter into such); Vitale v. Schering-Plough Corp., 231 N.J. 234 (2017) (same); Vasquez v. Glassboro Serv. Ass'n., 83 N.J. 86 (1980) (eviction terms conflicted with our public policy in "providing legal protection," for migrant farmworkers). Our Court has also refused to enforce contracts that are substantively against our State's public policy. See Kugler v. Romain, 58 N.J. 522, 547 (1971) (declining to enforce an unfair price for a sale of goods).

First, the parties' contract here was not procedurally unconscionable. Plaintiff's role in the parties' negotiations and creation of the contract evidenced by the emails and text messages showed "good faith," "honesty in fact" and "the observance of fair dealing." Cox, 138 N.J. at 18; N.J.S.A. 12A:1-201(20). There was no "deception," "unconscionable commercial practice," or "mislead[ing]."

33                                                      A-2818-24

Fenwick, 72 N.J. at 378.  If anything, defendant misled plaintiff by agreeing to return Koa back to her and then reneging after a discussion with Paul—someone who was not ever a party to the original or ostensibly the "second contract."

Second, the parties' contract was not substantively unconscionable and not violative of our State's public policy.  Our State's adoption of certain UCC provisions and other Acts applicable to a pet dealer's sale of a dog were intended to protect buyers, but that does not mean non-merchant, private parties cannot contract for provisions protecting sellers.  This is consistent with the notion that parties can contract away certain provisions under the UCC, unless prohibited by the code.  See N.J.S.A. 12A:1-302(a) ("Except as otherwise provided . . . elsewhere in the [UCC], the effect of provisions of the [UCC] may be varied by agreement.").

Saliently, our courts have also enforced provisions of the UCC that protect the seller in a sale of goods.  See Com. Credit Corp. v. Satterthwaite, 107 N.J.L. 17, 18 (Sup. Ct. 1930) (defining a "conditional sales contract," as "any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency"); N.J.S.A. 17:16C-1(b).  Under

34

this type of contract, the buyer does not obtain a legal right to the goods until the buyer renders payment or a certain agreed upon condition occurs—both of which are intended to protect the seller.

In sum, the "right to return" term here was not a "harsh" or an "unfair one-sided term[]." <u>Muhammad</u>, 189, N.J. at 15.  Defendant enjoyed the benefit of Koa until the right to return term was exercised by plaintiff.  Even more important is the fact that defendant disregarded this contract term and kept Koa much longer than she was rightfully permitted.  We therefore conclude the trial court did not violate any procedural or substantive public policy of this State by enforcing a term that protected plaintiff as the seller.

IV.

Finally, defendant contends that, contrary to the trial court's finding, she did not have a duty to disclose her attachment disorder to plaintiff prior to purchasing Koa.  Defendant contends the trial court's finding on this issue was unsupported by any statute, rule, or case law, and the regulation governing the sale of animals does not provide any provisions as to the fitness of the buyer, let alone provisions mandating the buyer to disclose a tendency to become attached quickly.  N.J.A.C. 13:45A-12.1.

We discern no error. Defendant opened the door at trial by introducing evidence of her attachment disorder by eliciting testimony from her therapist. Accordingly, defendant waived any confidentiality and privilege. See, e.g., The Health Insurance Portability and Accountability Act (HIPPA), 42 U.S.C. §§ 1320d to -9 (prohibiting the use or disclosure of protected health information, including psychiatric records, without valid authorization, absent certain exceptions); N.J.A.C. 10:37-6.79 (ensuring the confidentiality of records identifying persons who have received health services from a provider licensed by the Department of Health, absent exceptions). In light of the evidence pertaining to defendant's attachment disorder, the trial court was justified in considering this evidence in making its decision.

We reject defendant's argument that the trial court improperly determined she should have disclosed her diagnosis of an attachment disorder to plaintiff prior to entering into the contract for Koa. The trial court rightfully found nondisclosure of her disorder attributed to defendant's credibility as a whole, which it was permitted to do. See Cumberland Farms, Inc., 447 N.J. Super. at 437 ("findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.").

A-2818-24

The trial court's statement that defendant had a duty to reveal her attachment disorder to plaintiff was harmless error at best. We reiterate, the "right to return" term was integrated within the parties' contract, and such finding merely attributed to plaintiff's credibility. See Boland v. Dolan, 140 N.J. 174, 189 (1995) ("a reviewing court should reverse only if a trial error is clearly capable of producing an unjust result."); R. 2:10-2 ("[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2818-24